FILED

DEC 3 1 2008

Clerk, U.S. District and
Bankruptcy Courts

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GREGORY S. HOLLISTER,                    :
                                         :
                    *Plaintiff*          :
                                         :
        *vs.*                            :    CIVIL ACTION NO.
                                         :
BARRY SOETORO, a/k/a Barack              :
Hussein Obama, in his capacity as        :
a natural person;  in his capacity as    :
*de facto* President *in posse*; and in his :
capacity as *de jure* President *in posse* :
        and                              :
JOSEPH R. BIDEN, JR., in his capacity    :
as a natural person; in his capacity as  :
*de jure* Acting President *in posse*; in his :
capacity as *de jure* President *in posse*; :
and in his capacity as *de jure* Vice-   :
President *in posse;*                     :
        and                              :
NATURAL and UN-NATURAL                   :
DOES 1-100 INCLUSIVE,                    :
                                         :
                    *Defendants* :

> Case: 1:08-cv-02254
> Assigned To : Robertson, James
> Assign. Date : 12/31/2008
> Description: General Civil

## COMPLAINT FOR INTERPLEADER AND
## DECLARTORY AND INJUNCTIVE RELIEF

Plaintiff through his Counsel, Philip J. Berg, Esquire and Lawrence J. Joyce,

Esquire allege the following in support of his Complaint for Interpleader, Declaratory and

Injunctive Relief:

### JURISDICTION AND VENUE

1.    This is a claim in the nature of Interpleader, with Jurisdiction in this Court based upon

28 U.S.C.  § 1335  with diversity of citizenship; there is complete diversity of

citizenship between the Plaintiff and all Defendants in this suit. This case is also

brought pursuant to the aforementioned statute and Federal Rule of Civil Procedure

22.

2.     Plaintiff Gregory S. Hollister is a resident of the State of Colorado; Defendant Barry Soetoro a/k/a Barack Hussein Obama is a resident of Illinois, possibly Washington D.C. and may be a Foreign National; and Joseph R. Biden, Jr. is a resident of the State of Delaware and possibly Washington, D.C.

## PARTIES

3.   Plaintiff, Gregory S. Hollister[hereinafter "Hollister"] is a citizen of the United States and a resident of 9235 Bell cove Circle Colorado Springs, Colorado; 80920

4.     Defendant, Barry Soetoro a/k/a Barack Hussein Obama, [hereinafter "Soetoro"] is an adult individual and is a resident of Illinois, possibly Washington, D.C., and may be a Foreign National with an office address of Presidential Transition Team, 451 Sixth Street, N.W., Washington, D.C. 20270;

5.     Defendant, Joseph R. Biden, Jr. [hereinafter "Biden"] is a citizen of the United States with an office address of Presidential Transition Team, 451 Sixth Street, N.W., Washington, D.C. 20270 and is a resident of Delaware and possibly Washington, D.C.

## FACTUAL ALLEGATIONS

6.     Plaintiff Hollister is a retired Colonel from the United States Air Force.  Hollister joined the United States Air Force and began active duty in 1978.  Hollister served twenty [20] years of honorable service and retired in 1998.

7.     Hollister took the Oath of Enlistment which states *"I, Gregory S. Hollister, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance*

2

*to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God"* [emphasis added]

8.      As a result of Hollister having served a regular commission, he is in what is called the "Individual Ready Reserve." That means he is subject to Presidential recall for the rest of his life. Hollister's discharge papers are attached hereto as **Exhibit "A"**.

9.      Plaintiff is in possession of certain property. This property consists of duties owed by the Plaintiff to the Commander-in-Chief of the Armed Forces of the United States and to all others above Plaintiff's rank in his chain of command, and this property also consists of certain relationships. It has been held in the federal jurisdiction that property can pertain to intangible res. *Carpenter v. United States,* 484 U.S. 19, 25-27, 108 S.Ct. 316, 320-321, 98 L.Ed.2d 275, 283-284 (1987). Other federal courts have stated that property can be recognized in other types of an intangible res as well. *First Victoria National Bank v. United States*, 620 F.2d 1096, 1106-1107 (5th Cir. 1980) ("rice history acreage", like "good will of a business", is property); *Matter of Nichols*, 4 B.R. 711, 717 (E.D. Mich. 1980) (citing Black's Law Dictionary at 1095 for proposition that "property" encompasses all things "corporeal or incorporeal, tangible or intangible, visible or invisible…"). Significantly, the District of Massachusetts has found that property can be recognized in a relationship, such as a landlord-tenant relationship, or an employer-employee relationship. *Glosband v. Watts Detective Agency, Inc.*, 21 B.R. 963, 971-972. (D. Mass. 1982).

10.      The statute  Plaintiff relies on for bringing this case in the nature of Interpleader does not state a requirement that the property be tangible or intangible. *Bank of Neosho v. Colcord*, 8 F.R.D. 621 (W.D. Mo. 1949) (a case in the federal jurisdiction in which an

intangible *res* [a duty] was the subject of Interpleader).  The Plaintiff has found no case in which a Court held that intangible *res* cannot be the subject of Interpleader; and the wording of the statute upon which the Plaintiff relies to bring this case in the nature of Interpleader must be considered in light of two holdings by the Supreme Court on statutory construction: *Martin v. Wilks*, 490 U.S. 760, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) and *N.O.W. v. Scheidler*, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994).

11.    In light of *Martin v. Wilks* and *N.O.W. v. Scheidler*, any attempt to read into the federal Interpleader statute a requirement that the property rights pertain only to a tangible *res* would constitute an impermissible addition of an element not contained in the statute itself.

12.    Plaintiff's duties themselves are the duty to obey lawful orders, the duty to disobey at least certain unlawful orders, and the duty to support and defend the Constitution against all enemies, both foreign and domestic; put another way, the Plaintiff is in possession of obligations he owes to the Acting President or President (and all others above the Plaintiff in his chain of command) to receive the performance of these duties from the Plaintiff.  Each of these duties is worth Five Hundred [$500.00] Dollars.

13.    The relationships are the superior/subordinate relationships that Plaintiff has with each person above him in the chain of command, including the Acting President or President, and the relationship Plaintiff and the Department of Defense reciprocally have with each other as employer/employee.  Each of these relationships is worth Five Hundred [$500.00] Dollars or more.

14.    Plaintiff has reason to believe that Soetoro may not be  a "natural born" United States Citizen and therefore is not qualified pursuant to the United States Constitution to

serve as President of the United States. Article II, Section I, Cl. 5 states that only a "natural born" United States citizen shall be eligible to the Office of President.

15.     Plaintiff's questions regarding Soetoro's eligibility to serve as President of the United States pursuant to the Constitution arose when Plaintiff learned Soetoro may have been born in Kenya to a U.S. citizen mother and a foreign national. This was further complicated when Plaintiff learned that Soetoro attended a public school in Indonesia under the name of Barry Soetoro, as an Indonesian Citizen.

16.     The American publics' knowledge of Soetoro is based in substantial part on his memoir, *"Dreams from my Father"*. Although Soetoro is silent about his birthplace in his Memoir he speaks in detail about his life in Indonesia. Unfortunately, Soetoro's records pertaining to his life are confidential either by being sealed or by statute, depriving Plaintiff and all citizens access to such documents.

17.     Evidence points to the fact that Soetoro, at the time of birth his name was Barack Hussein Obama, was born at Coast Hospital in Mombasa, Kenya located in Coast Province. Soetoro's father was a Kenyan citizen and Soetoro's mother a United States citizen who was not old enough and did not reside in the United States long enough to register Soetoro's birth in Hawaii as a "natural born" United States citizen.

18.     Under the laws in effect between December 24, 1952 and November 14, 1986 (Soetoro was born in 1961), a child born outside of the United States to one citizen parent and one foreign national, could acquire "natural born" United States citizenship if the United States citizen parent had been physically present in the United States for ten (10) years prior to the child's birth, five (5) of those years being after age fourteen (14). Nationality Act of 1940, revised June 1952; *United States of America v. Cervantes-Nava*, 281 F.3d 501 (2002),

*Drozd v. I.N.S.*, 155 F.3d 81, 85-88 (2d Cir.1998), *United States v. Gomez-Orozco*, 188 F.3d 422, 426-27 (7th Cir. 1999), *Scales v. Immigration and Naturalization Service*, 232 F.3d 1159 (9th Cir. 2000), *Solis-Espinoza v. Gonzales*, 401 F.3d 1090 (9th Cir. 2005). Soetoro's mother was only eighteen (18) when Obama was born in Kenya and therefore, did not meet the age and residency requirements for her child to have acquired "natural born" U.S. citizenship even under the statute. Therefore, Soetoro could not be a "natural born" United States citizen in any event under these facts. The law that applies to a birth abroad is the **law in effect at the time of birth**, *Marquez-Marquez a/k/a Moreno v. Gonzales*, 455 F. 3d 548 (5th Cir. 2006), *Runnett v. Shultz*, 901 F.2d 782, 783 (9th Cir.1990) (holding that "the applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth").

19.    Soetoro's Kenyan grandmother, Sarah Obama, has repeatedly stated Soetoro was born in Kenya and she was present in the hospital during his birth. Bishop Ron McRae, who oversees the Anabaptists Churches in North America, and Reverend Kweli Shuhubia, had the opportunity in or about October 2008 to interview Sarah Obama. Reverend Kweli Shuhubia went to the home of Sarah Obama located in Kogello, Kenya. Reverend Kweli Shuhubia called Bishop McRae from Ms. Obama's home and placed the call on speakerphone. Bishop McRae asked if it was okay to tape the conversation, which permission was granted. Because Ms. Obama only speaks Swahili, Reverend Kweli Shuhubia and another grandson of Ms. Obama's translated the telephone interview. Bishop McRae asked Ms. Obama where Soetoro was born; Ms. Obama answered in Swahili and was very adamant that Soetoro  was born in Kenya. Bishop McRae asked Ms. Obama if she was present during her grandson's birth and Ms. Obama answered, "Yes."

20.     Reverend Kweli Shuhubia left after interviewing Ms. Obama, and traveled to Mombosa, Kenya. Reverend Kweli Shuhubia interviewed personnel at the hospital where Ms. Obama said Soetoro was born in Kenya. Reverend Kweli Shuhubia then immediately had meetings with the Provincial Civil Registrar. Reverend Kweli Shuhubia learned there were records of Ann Dunham giving birth to Barack Hussein Obama, Jr. in Mombosa, Kenya on August 4, 1961. Reverend Kweli Shuhubia spoke directly with an Official, the Principal Registrar, who openly confirmed that the birthing records of Soetoro under the name "Barack H. Obama, Jr." and his mother were present; however, the file on Barack H. Obama, Jr. was classified. The Official explained Barack Hussein Obama, Jr.'s birth in Kenya is top secret.

21.     Soetoro continues to verbally deny he was born in Kenya and states he was born in Hawaii. Upon investigation into the alleged birth of Soetoro in Honolulu, Hawaii, Soetoro's birth is reported as occurring at two (2) separate hospitals, Kapiolani Hospital and Queens Hospital. The Rainbow Edition News Letter, November 2004 Edition, published by the Education Laboratory School did a several page article of an interview with Soetoro and his half-sister, Maya. The Rainbow Edition News Letter reports Soetoro was born August 4, 1961 at Queens Medical Center in Honolulu, Hawaii. In February 2008, Soetoro's half-sister, Maya, was again interviewed, this time by the Star Bulletin. Therein Maya stated that Soetoro was born August 4, 1961 in Kapiolani Medical Center for Women & Children. Obviously an attempt by Maya to validate a birth in Hawaii she knew did not occur.

22.     Moreover, Soetoro allowed the Daily Kos, Factcheck and his campaign website to post a Hawaiian Certification of Live Birth (COLB), purported to be Soetoro's on their websites. There are several problems with this. The image posted on dailykos.com, factcheck.org and fightthesmears.com has been deemed an altered and forged document

7

according to document image specialists.  Moreover, even if this document purported to be Soetoro's Certification of Live Birth was an accurate document, it still could  not prove "natural born" U.S. citizenship status.   The Hawaii Department of Health issues a Certification of Live Birth to births that occurred abroad in foreign countries as well as births that occurred at home and not in a hospital.  Certifications of Live Birth are issued to those born  as "naturalized" U.S. citizens as well as "natural born" U.S. citizens.  It should be noted, Soetoro's sister, Maya Soetoro-Ng was born in Indonesia in 1970, she was born a "natural" citizen of Indonesia, however, her birth was registered in Hawaii as a birth abroad and she is only a "naturalized" citizen, not "natural born"; despite this she was issued a Hawaiian Certification of Live Birth (COLB).

23.   A Certification of Live Birth is **not** sufficient evidence to prove one is  in fact a "natural born" U.S. citizen.

24.   Additionally, Dr. Fukino, Director of the Hawaiian Department of Health released a press release stating she saw Soetoro's "vault" version birth certificate in a file.  Although, Dr. Fukino does not claim Soetoro was born in Hawaii or the U.S. for that matter, she does confirm the "vault" version birth certificate exists.  Once again, Soetoro refuses to release access to this "vault" version birth certificate that if it were legitimate, would show doctors signatures, city, state and country of birth, and of course would solve the issue of where he was in fact born.

25.   It appears that Soetoro became an Indonesian citizen.   When Soetoro was approximately four (4) years old his parents divorced and thereafter, Soetoro's mother, Stanley Ann Dunham, married Lolo Soetoro, a citizen of Indonesia.  Evidence points to the fact that Lolo Soetoro either signed a government form legally "acknowledging" Soetoro as

his son or "adopted" Soetoro, either of which changed any citizenship status Soetoro had to a "natural" citizen of Indonesia.

26.     All Indonesian students were required to carry government identity cards or *Karty Tanda Pendudaks*, as well as family card identification called a *Kartu Keluarga*. The *Kartu Keluarga* is a family card which bears the legal names and citizenship status of all family members.

27.     Soetoro  was registered in a public school as an Indonesian citizen by the name of Barry Soetoro and his father was listed as Lolo Soetoro, M.A.  Indonesia did not allow foreign students to attend their public schools in the late 1960's or 1970's, and any time a child was registered for a public school, their name and citizenship status was verified through the Indonesian Government.  See Constitution of Republic of Indonesia (*Undang-Undang Dasar Republik Indonesia 1945*), Chapter 13, Law No. 62 of 1958 (all citizens of Indonesia have a right to education).  The school record, attached hereto as **Exhibit "B"**, indicates that Soetoro's name is "Barry Soetoro;" his nationality is "Indonesia;" and his religion as "Islam".  There was no way for Soetoro to have attended school in Jakarta, Indonesia legally unless he was an Indonesian citizen, as Indonesia was under tight rule and was a Police State.  See Constitution of Republic of Indonesia (*Undang-Undang Dasar Republik Indonesia 1945*), Law No. 62 of 1958.  These facts indicate that Soetoro is an Indonesian citizen, and therefore he is not eligible to be President of the United States.

28.     Under Indonesian law, when a male acknowledges a child as his son, it deems the son, in this case Soetoro, an Indonesian State citizen.  Constitution of Republic of Indonesia, Law No. 62 of 1958 concerning Immigration Affairs and Indonesian Civil Code (Kitab Undang-undang Hukum Perdata) (KUHPer) (Burgerlijk Wetboek voor Indonesie).

29.     Furthermore, under the Indonesian adoption law, once an Indonesian citizen adopts a child, the adoption severs the child's relationship to the birth parents, and the adopted child is given the same status as a natural child and the child takes the name of his step-father, in this case, Soetoro.  See Indonesian Constitution, Article 2**.**

30.     The Indonesian citizenship law was designed to prevent apatride (stateless) or bipatride (dual) citizenship.  Indonesian regulations recognized neither apatride nor bipatride (stateless or dual) citizenship.  Since Indonesia did not allow dual citizenship; neither did the United States (since the United States only permitted dual citizenship when 'both' countries agree); and since Soetoro was a "natural" citizen of Indonesia, the United States would not step in or interfere with the laws of Indonesia.  Hague Convention of 1930.

31.     As a result of Soetoro's Indonesian  "natural" citizenship status, Soetoro could never regain U.S. "natural born" status, if he in fact he ever held such, which we doubt. Soetoro could have **only** become "naturalized" if the proper paperwork were filed with the U.S. State Department, after going through U.S. Immigration after his return to the United States; in which case, Soetoro would have received a Certification of Citizenship indicating "naturalized."

32.     Plaintiff is informed, believes and thereon alleges Soetoro was never naturalized in the United States after his return.  Soetoro was ten (10) years old when he returned to Hawaii to live with his grandparents.  Soetoro's mother did not return with him.  Therefore, it appears that she did not apply for citizenship for Soetoro in the United States.  If citizenship of Soetoro had been applied for in 1971, Soetoro would have a Certification of Citizenship. If Soetoro returned in 1971 to Hawaii without going through U.S. Immigration, today he would be an "illegal alien" – and obviously not able to serve as President, but also his term as

a United States Senator from Illinois for nearly four (4) years was illegal. Plaintiff believes Soetoro might have reentered the United States at age ten (10) by showing a copy of his aforementioned Hawaiian Certification of Live Birth or his Indonesian Passport.

33.     Moreover, Plaintiff has been unable to locate any legal documents wherein Soetoro's name was legally changed from Barry Soetoro to Barack Hussein Obama.

34.     Plaintiff is literally caught between a rock and a hard place. If reactivated, he comes under a duty to obey lawful orders. He would come under a duty, under at least certain circumstances, to disobey unlawful orders. He would come under a duty to support and defend the Constitution against all enemies, both foreign and domestic. But to whom will these duties be owed from January 20, 2009 on? And against whom will these duties operate? Soetoro or Biden?

35.     This dilemma is particularly distressful to the Plaintiff in light of the current state of the law on obeying or disobeying unlawful orders. The Armed Forces themselves construe their oath to obey orders to require only that **they obey lawful orders**." See the *Uniform Code of Military Justice (UCMJ) 809.ART.90 (20)* (military personnel need only obey the "lawful command of his superior officer"); *891.ART.91 (2)*, (servicemember must obey the "lawful order of a warrant officer"; *892.ART.92 (1)* servicemember must obey the "lawful general order"), and *892.ART.92 (2)* ("lawful order"). And the courts have recognized even the affirmative duty of servicemembers to disobey unlawful orders, most notably in the notorious "My Lai Massacre" case, *United States v. Calley*, 22 USCMA 534, 48 CMR 19 (1973).

36.     In the instant case, the first question Plaintiff is concerned about is, "Does *United States v. New*, 55 M.J. 95 (2001) apply to a case in which the claim by the person declaring

that he is President is a claim that is false? And does this vary according to whether the claim to be President is 'palpably illegal on its face?'" See *New*, 55 M.J. at 108. *U.S. v. New* applies on its face to a soldier's duty to obey legal orders and disobey certain illegal orders, of course. But does it also apply with respect to the underlying question of whether the person giving the orders is even legitimately in office to give those orders in the first place?

37.     Plaintiff faces the possibility of a conflict in his duties and multiple claims against him for the performance of these duties. It has been held that Interpleader may be brought even though no demand has yet been made on a Plaintiff for the property in question. *Dunbar v. United States*, 502 F.2d 506 (5th Cir. 1974). Instead, the mere fact that the Plaintiff has a real, reasonable, bona fide fear of exposure to multiple claims or the hazards and vexation of conflicting claims is sufficient. *American Fidelity Fire Insurance Co. v. Construcciones Werl, Inc.*, 407 F. Supp. 164 (D. Virgin Islands 1975). See also, *Underwriters at Lloyd's v. Nichols*, 363 F.2d 357 (8th Cir. 1966) (in such circumstances, court has a duty to allow Interpleader).

38.     Plaintiff especially asks this Court to keep in mind that if Soetoro is sworn in, he could be blackmailed by anyone possessing *prima facie* evidence of his lack of natural-born citizenship. The blackmail could be for money, or could be for changing policy, whether foreign or domestic.

39.     Plaintiff fears the hazards and vexations of multiple conflicting orders and responsibilities with respect to his aforementioned duties, all of which may interfere with, and may possibly sever, their relationships with all those above him in the chain of command, including, but not limited to, the Acting President or President, and all of which may interfere with, and may possibly sever, their employer/employee relationship with the

Department of Defense.   These hazards and vexations can include court-martials, incarceration, reduction in rank, loss of benefits and privileges, a dishonorable discharge, and claims against him for damages, all of which might come, possibly in contradictory manner, from more than one source of authority, or at least from more than one claimed source of authority, above him.   Each of these injuries, and all of them, would constitute irreparable harm to the Plaintiff.   With respect to relief from each of these injuries, and all of them, damages will not suffice for Plaintiff, and there is no adequate remedy at law.

40.    It is particularly important to the Plaintiff to know whether Soetoro is eligible to be President before he is reactivated because if Soetoro issues an order to reactivate him, he will have to know whether that is an order he is required to obey, or perhaps (at least in certain cases) whether that is even an order he is required to disobey.   The evidence that Soetoro is not a "natural-born" citizen is so substantial that as things stand right now, unless this Court affirmatively declares that Soetoro is indeed constitutionally qualified to be President, Plaintiff will be of the opinion that he must refuse to recognize as being lawful the reactivation order and any other orders to him pursuant to the reactivation order.

41.    If the ordinary processes of law would then be available to the Plaintiff for a resolution of these conflicts upon their reactivation, perhaps his distress today would not be quite as pronounced as it is.   But the ordinary processes of law would not be available to the Plaintiff in the event that he is reactivated.   As this Court itself has held (and as was affirmed by the D.C. Circuit), Congress has by statute precluded members of the Armed Forces from having access to the Article III Courts until and unless they have first disobeyed an order and have been court-martialed for having done so, and all their appeals in the military courts have been  exhausted. *United States ex rel. New v. Perry*, 919 F. Supp. 491 (D.D.C. 1996); *aff'd*

*sub nom. New v. Cohen*, 129 F.3d 639 (D.C. Cir. 1997), *cert. den.*, 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513.

42.     Thus, the ordinary processes of the law in the Article III Courts are not available to the Plaintiff for a consideration of his plight once he is reactivated and deemed in active status.  This, of course, adds to all the other grounds the Plaintiff has for having a real, reasonable, bona fide fear of exposure to multiple claims or the hazards and vexation of conflicting claims.

43.     Plaintiff's concern over how to conduct himself, and his concern over multiple conflicting civil and criminal claims against him if Soetoro is sworn in is further increased by a recent Supreme Court decision, *Nguyen v. United States*, 539 U.S. 69 (2003).  In *Nguyen* the Supreme Court took note of the fact that the usual rule regarding the acts of *de facto* officers is that ordinarily they are equally valid as those of *de jure* officers.  The Court held nonetheless that the judgment of the Ninth Circuit had to be vacated on the grounds that there was a constitutional defect in the authority of the Article IV Court Judge to hear the appeals. *Nguyen v. United States*, 539 U.S. 69, 77-81, 123 S.Ct. 2130, 2135-2137, 156 L.Ed.2d 64, 75-78 (2003).

44.     Plaintiff is in need of the assistance of this Court.  Without a determination by competent authority as to whether Soetoro is or isn't constitutionally eligible to be President, the Plaintiff will be left on his own to determine his duties should he receive what is purported to be his reactivation orders from Soetoro, or conflicting orders from his superiors in the chain of command, or orders which may conflict with his duty to support and defend the Constitution.  In that respect, the Plaintiff retains an interest in the alleged properties at issue in this case.  Accordingly, if this Court does find that Soetoro is indeed constitutionally

qualified to hold the Office of President, Plaintiff will need for this Court to base such a finding upon a clear showing by affirmative evidence, consistent with Soetoro's burden of proof under Interpleader, that Soetoro is indeed a "natural born" United States citizen and qualified to be President in order to reduce any possibility that the deference to this Court might start to weaken among those above them in the chain of command with respect to this most crucial issue concerning the various duties of all members of the Armed Forces of the United States.

45.    This Court has to act now.  Judgment on the merits is the only thing that can prevent a horrible state of affairs for the Plaintiff and the members of our Armed Forces, the Courts and the nation. Plaintiff, members of the Armed Forces and the civilian populace have to know, and they have a right to know, who is lawfully entitled to be the Commander-in-Chief of the Armed Forces of the United States---who is lawfully entitled to "push the button", and who is not.

46.    In that hour when---God forbid---it actually becomes necessary to decide, one way or the other, whether to use America's nuclear arsenal, will the senior members of our military be under a legal duty to obey the orders of the would-be Commander-in-Chief, or will they be under a legal duty to disobey the order of an apparent enemy (foreign, or domestic) of the Constitution who holds the office of President? We ask the Court to bear in mind that, depending on what facts are ascertained at trial, the Court may conclude that Soetoro is in fact, right now, an illegal alien.

47.    The bottom line, then, is this: As things stand now, without this Court's intervention, the Plaintiff in the instant case will be left completely out in the cold following Inauguration Day if he should happen to face a possible conflict between his duties to obey

lawful orders on the one hand and his duties to disobey unlawful orders and defend the Constitution on the other hand, particularly if the unlawful order is "palpably illegal on its face", whatever their "interpretation of applicable law" may be, especially if the would-be Commander-in-Chief's claim to hold office is palpably subject to disbelief simultaneously. And if this is the case with respect to this Plaintiff, what then will likewise be the case for the Joint Chiefs of Staff if Soetoro is in fact sworn in?  Dare he speak up beforehand, if no national crisis is at hand? And will it be too late for him to speak up if in fact a national crisis does later on develop?

48.     Plaintiff moves this Court for the Court's Orders to be issued nunc pro tunc in the event this Court declares Soetoro to be constitutionally ineligible to serve as President of the United States, after Soetoro has been sworn in.


### FIRST CAUSE OF ACTION
### Claim for Relief
### Interpleader
### 28 U.S.C. § 1335  and F.R.C.P. 22


49.     Plaintiff hereby incorporates Paragraphs 1 through 48 as if fully set forth herein.

50.     Plaintiff is in possession of certain property.  This property consists of the rights pertaining to the duties owed by the Plaintiff to the Commander-in-Chief of the Armed Forces of the United States and to all others above him in his chain of command, and this property also consists of certain relationships.   The rights pertaining to each of these duties is worth Five Hundred [$500.00] Dollars or more. The rights pertaining to each of these relationships is worth Five Hundred [$500.00]

Dollars or more.  Plaintiff will deposit with this Court, if necessary, a Bond in the amount of Two Thousand [$2,000.00] Dollars  for the combined sum of the properties that the Plaintiff possesses pertaining to the duties and relationships alleged in this Complaint.

51.     Plaintiff is also in possession of Soetoro's Indonesian School Record showing his name as Barry Soetoro and his citizenship status as Indonesian, and Plaintiff is in possession of his discharge document and  has requested copies of his own enlistment papers.  The document denominated as Soetoro's Indonesian School Record showing his name as Barry Soetoro and his citizenship status as Indonesian has a value of Five Hundred [$500.00] Dollars or more; Plaintiff's discharge document has a value of Five Hundred [$500.00] or more and has been deposited with this Court.  Plaintiff has requested copies of his enlistment papers, which likewise have a value of Five Hundred [$500.00] Dollars or more, and copies of this documents will be deposited with this Court once they are received from United States Department of Defense.  Of course, Plaintiff's original enlistment papers are in the possession of the United States Department of Defense.

52.   Plaintiff knows that each of the Defendants, and those acting under either of them, may have competing rights between themselves to the property rights in these duties, relationships, and documents, and the right to claim all the property rights with respect to all of these duties, relationships, and documents shall belong to either Soetoro or Biden as of Noon, Eastern Standard Time, on January 20, 2009, but Plaintiff does not know which of these two persons may properly claim the property rights in these duties, relationships, and documents.

53. Plaintiff has a real, reasonable, bona fide fear of exposure to multiple claims or the hazards and vexation of conflicting claims brought by either or both of the Defendants, or by those acting under either of them.

54. Likewise, the document denominated as Soetoro's Indonesian School Record showing his name as Barry Soetoro and his citizenship status as Indonesian, which we have filed with this Court as **Exhibit "B"**, is a chattel of peculiar value not fungible with other chattels, and the Plaintiff has a real, reasonable, bona fide fear that he could be subject to injunctive relief over it and possible criminal prosecution by Soetoro, Biden or those acting under either of them for unlawfully withholding it.

55. Plaintiff's discharge documents, which is filed with this Court as **Exhibit "A"**, and his enlistment papers are also chattels of a peculiar value not fungible with other chattels, and the Plaintiff has a real, reasonable, bona fide fear that if he is expelled from the military by Soetoro or Biden or by those acting under either of them, the substance of the provisions of those papers would lose much of their meaning and value.

56. By virtue of these fears and concerns, which, if realized, would subject Plaintiff to irreparable harm as to which damages would not suffice, and as to which there is no adequate remedy at law, Plaintiff is entitled to use Interpleader under 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22 to join Soetoro and Biden as Defendants to cause them to come forward with the proof of Soetoro's constitutional eligibility to serve as President of the United States pursuant to Article II, § 1, Cl. 5 of the U.S. Constitution and proof as to which of them may be entitled to the rights pertaining to the property which the Plaintiff alleges that he holds, so that Plaintiff might receive

from this Court a declaration of the Plaintiff's rights and duties with respect to each Defendant, and Injunctive Relief as may be appropriate against either or both Defendants on behalf of the Plaintiff.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A.      Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as a natural person is hereby **constitutionally ineligible** to be President of the   United States pursuant to Article II, § 1, Cl. 5 of the Constitution of the United States and the same is hereby Ordered to refrain from assuming, or taking the oath of, said office or exercising the duties and functions thereof,    and    to    refrain    from interfering with, or claiming, the properties of the Plaintiff alleged in this Complaint; or

B.      Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as *de facto* President of the United States *in posse* is hereby **constitutionally ineligible** to be President of the United States pursuant to Article II, § 1, Cl. 5 of the Constitution of the United States and the same is hereby Ordered to refrain from assuming, or taking the oath of, said office or exercising the duties and functions thereof, and to refrain from interfering with, or claiming, the properties of the Plaintiff alleged in this Complaint; or

C.      Declare if this Court finds on the merits that Barry Soetoro a/k/a Barack Hussein Obama is **not** eligible to be President after Barry Soetoro a/k/a Barack Hussein Obama has been sworn in as President, that Barry Soetoro a/k/a Barack Hussein Obama is further barred and prohibited *nunc pro tunc* from holding the

Office of President and from exercising the functions and duties of said Office, and from interfering with, or making any claim to, the properties of the Plaintiff alleged in this Complaint; and

D.     Order Plaintiff to refrain from recognizing Barry Soetoro a/k/a Barack Hussein Obama as President of the United States and Commander-in-Chief of the Armed Forces thereof; or

E.     Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as a natural person is hereby eligible to be President of the United States, pursuant to Article II, § 1, Cl. 5 of the Constitution of the United States, and that he may rightfully claim the properties of the Plaintiff alleged in this Complaint upon assuming the Office of President of the United States; or

F.     Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as *de jure* President of the United States *in posse* is hereby eligible, pursuant to Article II § 1, Cl. 5 of the Constitution of the United States, to be President of the United States, and that he may rightfully claim the properties of the Plaintiff alleged in this Complaint upon assuming the Office of President of the United States; and

G.     Order Plaintiff to recognize Barry Soetoro a/k/a Barack Hussein Obama as *de jure* President of the United States and Commander-in-Chief of the Armed Forces thereof from the time of his inauguration into that office and Joseph R. Biden as *de jure* Vice-President of the United States from the time of his inauguration into that office, for the term of each office beginning at Noon, Eastern Standard Time, January 20, 2009; or

H.    Order Plaintiff to look to Joseph R. Biden for Orders if this Court finds

Barry Soetoro a/k/a Barack Hussein Obama constitutionally ineligible pursuant to

Article II, § 1, Cl. 5 of the U.S. Constitution; and

I.    Retain Jurisdiction of this action to ensure the Court's Orders are being

fully enforced; and

J.    Award Plaintiff his Attorney Fees and Costs and Grant Plaintiff such other

and further relief as this Honorable Court deems just and proper.


                                        Respectfully submitted,


Dated:  December  21 , 2008

                                        Philip J. Berg, Esquire
                                        *Attorney for Plaintiff*
                                        555 Andorra Glen Court, Suite 12
                                        Lafayette Hill, PA   19444-2531
                                        Identification   No.  09867
                                        (610) 825-3134


Dated:  December  31 , 2008

                                        Lawrence J. Joyce, Esquire
                                        *Attorney for Plaintiff*
                                        1517 N. Wilmot Road, Suite 215
                                        Tucson, AZ 85712
                                        Arizona Bar No. 020856
                                        (520) 584-0236


Dated: December  21 , 2008

                                        John D. Hemenway*
                                        D.C. Bar #379663
                                        9235 Bell Cove Circle
                                        Colorado Springs, Colorado
                                        80920

**EXHIBIT "A"**

IDENTIFICATION PURPOSES · SAFEGUARD IT. AREAS RENDER FORM VOID

# DD FORM 214 WORKSHEET

| 1. NAME (Last, First, Middle)<br>HOLLISTER GREGORY SCOTT | 2. DEPARTMENT, COMPONENT AND BRANCH<br>AIR FORCE - REG AF | 3. SOCIAL SECURITY NO.<br>■■ ■ ■■ |
|---|---|---|

| 4.a. GRADE, RATE OR RANK<br>COLONEL | 4.b. PAY GRADE<br>O6 | 5. DATE OF BIRTH (YYMMDD) | 6. RESERVE OBLIG. TERM. DATE<br>Year N/A \| Month \| Day |
|---|---|---|---|

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY<br>COLORADO SPRINGS CO | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known)<br>HORNELL NY |
|---|---|

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND<br>50 COMM GP (AFSPC) | 8.b. STATION WHERE SEPARATED<br>FALCON AFB   CO |
|---|---|

| 9. COMMAND TO WHICH TRANSFERRED<br>NOT APPLICABLE | 10. SGLI COVERAGE  ☐ None<br>Amount: $ 200,000 |
|---|---|

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.)<br>02C0O - LOGISTICS COMMANDER 1 YR 04 MOS<br>C33S4 - COMMUNICATION AND INFORMATION/<br>COMMANDER - 18 YRS 10 MOS | 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|---|
| | a. Date Entered AD This Period | 1978 | May | 31 |
| | b. Separation Date This Period | 1998 | Jul | 31 |
| | c. Net Active Service This Period | 20 | 02 | 01 |
| | d. Total Prior Active Service | 00 | 00 | 00 |
| | e. Total Prior Inactive Service | 00 | 00 | 00 |
| | f. Foreign Service | 01 | 11 | 19 |
| | g. Sea Service | 00 | 00 | 00 |
| | h. Effective Date of Pay Grade | 1996 | Aug | 01 |

**13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED** (All periods of service)

Defense Meritorious Service Medal, Meritorious Service Medal with 5 devices, Air Force Training Ribbon, Air Force Overseas Long Tour Ribbon, National Defense Service Medal with 1 device, Air Force SEE REMARKS

**14. MILITARY EDUCATION** (Course title, number of weeks, and month and year completed)

Air Command and Staff College - 40 weeks, Armed Forces Staff College - 9 weeks, Graduate Teleprocessing Science - 51 weeks, Squadron Officer School - 9 weeks, Communications Systems Officer - 32 weeks, Survival SEE REMARKS

| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No<br>X | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes<br>X | No | 16. DAYS ACCRUED LEAVE PAID<br>79.0 |
|---|---|---|---|---|---|---|

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | Yes | X | No |
|---|---|---|---|

**18. REMARKS**
ITEM 13:    Longevity Service Award with 4 devices, Air Force Outstanding Unit Award with 1 device, Joint Meritorious Unit Award, Air Force Organizational Excellence Award with 2 devices, Legion of Merit.
ITEM 14:    Training - 4 weeks, Water Survival - 2 days, Squadron Officer School - 32 weeks, Cumputer System Staff Officer - 5 weeks, Air Command and Staff College (Corres) - 40 weeks, Air War College - 40 weeks, Joint C3 Staff and Operations Course - 6 weeks, Army War College - 44 weeks, Executive Forum on Communications-Computer - 1 week,  Marine Corps Comm and Staff College - 43 weeks, Base Commander Course - 1 week.
Subject to Recall to active duty and/or annual screening.

| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | 19.b. NEAREST RELATIVE (Name and address - include Zip Code)<br>ALVIN D. PECK<br>2760 CLARENDON<br>COLORADO SPRINGS CO 80916 |
|---|---|

| 20. MEMBER REQUESTS COPY 6 BE SENT TO (O DIR. OF VET AFFAIRS) ☐ X Yes ☐ No | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) |
|---|---|
| 21. SIGNATURE OF MEMBER BEING SEPARATED | RAYMOND ■■■■■ TSGT, USAF<br>NCOIC ■■■■■ Relocations |

| **SPECIAL ADDITIONAL INFORMATION** (For use by authorized agencies only) | |
|---|---|
| 23. TYPE OF SEPARATION<br>VOLUNTARY RETIREMENT | 24. CHARACTER OF SERVICE (Include upgrades)<br>HONORABLE |

| 25. SEPARATION AUTHORITY<br>AFI 36-3203 | 26. SEPARATION CODE<br>RBD | 27. REENTRY CODE<br>NOT APPLICABLE |
|---|---|---|

| 28. NARRATIVE REASON FOR SEPARATION<br>SUFFICIENT SERVICE FOR RETIREMENT | |
|---|---|

| 29. DATES OF TIME LOST DURING THIS PERIOD<br>NONE | 30. MEMBER REQUESTS COPY 4 |
|---|---|

**DD Form 214WS, NOV 88, EG**      Previous editions are obsolete
Generated by Dept of Air Force PC-III

1. NAME (LAST, FIRST, MI)  2. DEPARTMENT,COMPONENT AND BRANCH  3. SOCIAL SECURITY
HOLLISTER GREGORY SCOTT          AIR FORCE – REG AF          ▮▮▮▮▮▮▮

4a. GRADE, RATE, OR RANK    4b. PAY GRADE    4c. DATE OF SEPARATION
COLONEL                    O6               1998  Jul 31

Copy 5 - Louisiana Claims Control Center, UCX/UCFE, PO BOX 94246, Capital
Stations, Baton Rouge LA 70804-9246.
Copy 3 - Department of Veterans Affairs, Data Processing Center (214),
1615 E. Woodward St., Austin TX 78772.
-----------------------------NOTHING FOLLOWS-----------------------------

HOLLISTER GREGORY SCOTT

RAYMOND A. NIVENS, TSGT, USAF
NCOIC, Personnel Relocations

**EXHIBIT "B"**

REGISTRATION or GRADEBOOK

NO. 203.

1. The name of the pupil: Barry Soetoro

2. The place and date of birth: Honolulu 4-8-1961

3. The nation
        a. of Citizenship: Indonesia
        b. The foreign descendants:
        c. The ethnic group:

4. The religion: Islam

5. Address of the pupil: Menteng Dalam ROO1/ROO3

6. From which school (moved from) and what class: ???

7.        a. Date accepted: 1-1-1968 (January 1, 1968)
        b. Grade: I (First grade)

8.        a. The name of the parents Mr./Ms.: L. Soetoro M A (Lolo Soetoro)
        b. Occupation/Job: (???? Geography ????)
        (name of the mother will only be used if father is deceased)
        c. Address: Menteng Dalam ROO1/ROO3

9. The name of the guardian:
        (??? was filled up, ??? parents of the pupil were not available, already ???? ????
        because another thing )
        b. Occupation/Job:
        c. The address: Menteng Dalam ROO1/ROO3

10. Left this school:
        a. ?? was finished. Outside from the class:     The date:
        b. ?? recieved ?? the date:    No.
        c. ?? the school to:

11. Other information:

ANGKA NILAI

No. 203.

1. Nama murid : Barry Soetoro    L / P

2. Tempat dan tanggal lahir : Honolulu   4-8-61

3. Bangsa: a. Warga negara : Indonesia

     b. Keturunan asing :

     c. Suku bangsa :

4. Agama : Islam

5. Alamat murid : Ment. Dalam R 007/RW 03

6. Dari sekolah mana (dipindahkan) dan kelas berapa : Taman Kanak² Fhode Aisis

7. a. Diterima disekolah ini tgl.: 1-1-1968

     b. Ditempatkan dikelas : 1

8. a. Nama orang tua  Ajah/Ibu : L. Soetoro M.A.

     b. Pekerdjaan : Peg. Dinas Geografi Dit. Top. A.D.

         (nama ibu diisi, hanja djika ajah sudah meninggal)

     c. Alamat : Ment. Dalam R 007/RW 03

9. a. Nama wali :

     (hanja diisi, djika orang tua murid tak ada, sudah meninggal atau karena hal lain)

     b. Pekerdjaan :

     c. Alamat :

10. Meninggalkan sekolah ini :

A. Belum tamat. Keluar dari kelas _____ tanggal _____ Sebab Pindah

     Kemana

B. Tamat, menerima idjazah tanggal _____ No.

C. Melandjutkan sekolah ke

11. Keterangan lain :

created with
nitro PDF professional
download the free trial online at nitropdf.com/professional