# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GREGORY S. HOLLISTER, | : | |
| | : | |
| *Plaintiff* | : | |
| *vs.* | : | CIVIL ACTION NO. 1:08-cv-02254 JR |
| | : | |
| BARRY SOETORO, a/k/a Barack | : | |
| Hussein Obama, in his capacity as | : | |
| a natural person;  in his capacity as | : | |
| *de facto* President *in posse*; and in his | : | |
| capacity as *de jure* President *in posse* | : | |
| and | : | |
| JOSEPH R. BIDEN, JR., in his capacity | : | |
| as a natural person; in his capacity as | : | |
| *de jure* Acting President *in posse*; in his | : | |
| capacity as *de jure* President *in posse*; | : | |
| and in his capacity as *de jure* Vice- | : | |
| President *in posse;* | : | |
| and | : | |
| NATURAL and UN-NATURAL | : | |
| DOES 1-100 INCLUSIVE, | : | |
| | : | |
| *Defendants* | : | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff through his Counsel, Philip J. Berg, Esquire and Lawrence J. Joyce, Esquire

allege the following in support of his Complaint for Interpleader, Declaratory and Injunctive

Relief:

## JURISDICTION AND VENUE

1.      This is a claim in the nature of Interpleader, with Jurisdiction in this Court based

upon 28 U.S.C. § 1335  with diversity of citizenship; there is complete diversity of

citizenship between the Plaintiff and all Defendants in this suit.

2.      Plaintiff Gregory S. Hollister is a resident of the State of Colorado; Defendant

Barry Soetoro a/k/a Barack Hussein Obama is a resident of Illinois, possibly Washington

1

Dockets.Justia.com

D.C. and may be a Foreign National; and Joseph R. Biden, Jr. is a resident of the State of Delaware and possibly Washington, D.C.

**PARTIES**

3.     Plaintiff, Gregory S. Hollister [hereinafter "Hollister"] is a citizen of the United States and a resident of Colorado Springs, Colorado;

4.     Defendant, Barry Soetoro a/k/a Barack Hussein Obama, [hereinafter "Soetoro"] is an adult individual and is a resident of Illinois, possibly Washington, D.C., and may be a Foreign National with an office address of The White House, 1600 Pennsylvania Avenue, N.W., Washington, D.C. 20500.

5.     Defendant, Joseph R. Biden, Jr. [hereinafter "Biden"] is a citizen of the United States with a residence at One Observatory Circle, N.W., Washington, D.C. and is a resident of Delaware and possibly Washington, D.C., with an office address of The White House, 1600 Pennsylvania Avenue, N.W., Washington, D.C. 20500.

**FACTUAL ALLEGATIONS**

6.     Plaintiff Hollister is a retired Colonel from the United States Air Force.  Hollister joined the United States Air Force and began active duty in 1978.  Hollister served twenty [20] years of honorable service and retired in 1998.

7.     Hollister took the Oath of Enlistment which states *"I, Gregory S. Hollister, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the*

*orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God."* **[emphasis added]**

8.      In addition to the enlistment Oath, Hollister was an Officer of the United States Military and therefore took an oath to support and defend the Constitution of the United States against all enemies foreign and domestic and he would bear true faith and allegiance to the same.   Hollister further took the Officer's Oath stating he took the obligation freely, without any mental reservation or purpose of evasion and that he will well and faithfully discharge his duties of the Office in which he serves so help him God.

9.      Officers in the United States armed Forces, including Hollister, do not swear an oath to the President, the Congress or the Department of Defense.   Their Oath is to the United States Constitution.

10.      As a result of Hollister having served a regular commission, he is in what is called the "Individual Ready Reserve."   That means he is subject to Presidential recall for the rest of his life.   Hollister's discharge papers are attached hereto as **EXHIBIT "A"**.

11.      Plaintiff is in possession of certain property.   This property consists of duties owed by the Plaintiff to the Commander-in-Chief of the Armed Forces of the United States and to all others above Plaintiff's rank in his chain of command, and this property also consists of certain relationships.   It has been held in the federal jurisdiction that property can pertain to an intangible res.   *Carpenter v. United States,* 484 U.S. 19, 25-27, 108 S.Ct. 316, 320-321, 98 L.Ed.2d 275, 283-284 (1987).   Other federal courts have stated that property can be recognized in other types of intangible res as well. *First Victoria National Bank v. United States*, 620 F.2d 1096, 1106-1107 (5th Cir. 1980) ("rice history acreage", like "good will of a business", is property); *Matter of Nichols*, 4 B.R. 711, 717 (E.D. Mich. 1980) (citing Black's

Law Dictionary at 1095 for proposition that "property" encompasses all things "corporeal or incorporeal, tangible or intangible, visible or invisible…"). Significantly, the District of Massachusetts has found that property can be recognized in a relationship, such as a landlord-tenant relationship, or an employer-employee relationship. *Glosband v. Watts Detective Agency, Inc.*, 21 B.R. 963, 971-972. (D. Mass. 1982)

12.    The statute  Plaintiff relies on for bringing this case in the nature of Interpleader does not state a requirement that the property be tangible or intangible. *Bank of Neosho v. Colcord*, 8 F.R.D. 621 (W.D. Mo. 1949) (a case in the federal jurisdiction in which an intangible *res* [a duty] was the subject of Interpleader). The Plaintiff has found no case in which a Court held that intangible *res* cannot be the subject of Interpleader; and the wording of the statute upon which the Plaintiff relies to bring this case in the nature of Interpleader must be considered in light of two holdings by the Supreme Court on statutory construction: *Martin v. Wilks*, 490 U.S. 760, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) and *N.O.W. v. Scheidler*, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)

13.    The duties which Plaintiff Hollister has toward the Commander-In-Chief of the Armed Forces of the United States, and to all others above him in his chain of command, also constitute obligations owed by the Plaintiff to the Commander-In-Chief and to all others above him in his chain of command.

14.    In light of *Martin v. Wilks* and *N.O.W. v. Scheidler*, any attempt to read into the federal Interpleader statute a requirement that the property rights pertain only to a tangible *res* or that the obligations would have to constitute the tendering of a tangible *res*  would constitute an impermissible addition of an element not contained in the statute itself.

15. Plaintiff's duties themselves are the duty to uphold our United States Constitution, obey lawful orders, the duty to disobey at least certain unlawful orders, and the duty to support and defend the Constitution against all enemies, both foreign and domestic; put another way, the Plaintiff is in possession of obligations he owes to the Acting President or President (and all others above the Plaintiff in his chain of command) to receive the performance of these duties from the Plaintiff. Each of these duties is worth Five Hundred [$500.00] Dollars or more.

16. The relationships are the superior/subordinate relationships that Plaintiff has with each person above him in the chain of command; including the Acting President or President, and the relationship Plaintiff and the Department of Defense reciprocally have with each other as employer/employee. Each of these relationships is worth Five Hundred [$500.00] Dollars or more.

17. Plaintiff has reason to believe that Soetoro may not be a "natural born" United States Citizen and therefore is not qualified pursuant to the United States Constitution to serve as President of the United States. Article II, Section I, Cl. 5 states that only a "natural born" United States citizen shall be eligible to the Office of President.

18. Plaintiff's questions regarding Soetoro's eligibility to serve as President of the United States pursuant to the Constitution arose when Plaintiff learned Soetoro may have been born in Kenya to a U.S. citizen mother and a foreign national. This was further complicated when Plaintiff learned that Soetoro attended a public school in Indonesia under the name of Barry Soetoro, as an Indonesian Citizen.

19. Furthermore, there is concern that Soetoro registered as a foreign national at Occidental College, Columbia University and Harvard Law School.

20.     The American public's [Note: "public" is in and of itself plural; accordingly, the possessive is "public's", knowledge of Soetoro is based in substantial part on his memoir, *Dreams from my Father*.  Although Soetoro is silent about his birthplace in his Memoir, he speaks in detail about his life in Indonesia.  Unfortunately, Soetoro's records pertaining to his life are confidential either by being sealed or by statute, depriving Plaintiff and all citizens access to such documents.

21.     Evidence points to the fact that Soetoro's name at the time of his birth was Barack Hussein Obama, and that he  was born at Coast Hospital in Mombasa, Kenya located in Coast Province.  Soetoro's father was a Kenyan citizen and Soetoro's mother a United States citizen who was not old enough and did not reside in the United States long enough to register Soetoro's birth in Hawaii as a "natural born" United States citizen.

22.     Under the laws in effect between December 24, 1952 and November 14, 1986 (Soetoro was born in 1961), a child born outside of the United States to one citizen parent and one foreign national, could acquire "natural born" United States citizenship if the United States citizen parent had been physically present in the United States for ten (10) years prior to the child's birth, five (5) of those years being after age fourteen (14).  Nationality Act of 1940, revised June 1952; *United States of America v. Cervantes-Nava*, 281 F.3d 501 (2002), *Drozd v. I.N.S.*, 155 F.3d 81, 85-88 (2d Cir.1998), *United States v. Gomez-Orozco*, 188 F.3d 422, 426-27 (7th Cir. 1999), *Scales v. Immigration and Naturalization Service*, 232 F.3d 1159 (9th Cir. 2000), *Solis-Espinoza v. Gonzales*, 401 F.3d 1090 (9th Cir. 2005).  Soetoro's mother was only eighteen (18) when Soetoro a/k/a Obama was born in Kenya and therefore she  did not meet the age and residency requirements for her child to have acquired "natural born" U.S. citizenship under the statute, even assuming that a statute could confer natural-

born citizenship status. Therefore, Soetoro could not be a "natural born" United States citizen in any event under these facts. The law that applies to a birth abroad is the **law in effect at the time of birth**, _Marquez-Marquez a/k/a Moreno v. Gonzales_, 455 F. 3d 548 (5th Cir. 2006), _Runnett v. Shultz_, 901 F.2d 782, 783 (9th Cir.1990) (holding that "the applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth").

23.    Soetoro's Kenyan grandmother, Sarah Obama, has repeatedly stated that Soetoro was born in Kenya and that she was present in the hospital during his birth. Bishop Ron McRae, who oversees the Anabaptists Churches in North America, and Reverend Kweli Shuhubia, had the opportunity in or about October 2008 to interview Sarah Obama. Reverend Kweli Shuhubia went to the home of Sarah Obama located in Kogello, Kenya. Reverend Kweli Shuhubia called Bishop McRae from Ms. Obama's home and placed the call on speakerphone. Bishop McRae asked if it was okay to tape the conversation, which permission was granted. Because Ms. Obama only speaks Swahili, Reverend Kweli Shuhubia and another grandson of Ms. Obama  translated the telephone interview. Bishop McRae asked Ms. Obama where Soetoro was born; Ms. Obama answered in Swahili and was very adamant that Soetoro  was born in Kenya. Bishop McRae asked Ms. Obama if she was present during Soetoro's  birth and Ms. Obama answered, "Yes."

24.    Reverend Kweli Shuhubia left after interviewing Ms. Obama, and traveled to Mombosa, Kenya. Reverend Kweli Shuhubia interviewed personnel at the hospital where Ms. Obama said Soetoro was born in Kenya. Reverend Kweli Shuhubia then immediately had meetings with the Provincial Civil Registrar. Reverend Kweli Shuhubia learned there were records of Ann Dunham giving birth to Barack Hussein Obama, Jr. in Mombosa, Kenya

on August 4, 1961. Reverend Kweli Shuhubia spoke directly with an Official, the Principal Registrar, who openly confirmed that the birthing records of Soetoro under the name "Barack H. Obama, Jr." and his mother were present; however, the file on Barack H. Obama, Jr. was classified. The Official explained Barack Hussein Obama, Jr.'s birth in Kenya is top secret.

25. Soetoro continues to verbally deny he was born in Kenya and states he was born in Hawaii. Upon investigation into the alleged birth of Soetoro in Honolulu, Hawaii, Soetoro's birth is reported as occurring at two (2) separate hospitals, Kapiolani Hospital and Queens Hospital. The Rainbow Edition News Letter, November 2004 Edition, published by the Education Laboratory School did a several page article of an interview with Soetoro and his half-sister, Maya. The Rainbow Edition News Letter reports Soetoro was born August 4, 1961 at Queens Medical Center in Honolulu, Hawaii. In February 2008, Soetoro's half-sister, Maya, was again interviewed, this time by the Star Bulletin. Therein Maya stated that Soetoro was born August 4, 1961 in Kapiolani Medical Center for Women & Children.

26. Moreover, Soetoro allowed the Daily Kos, Factcheck and his campaign website to post a Hawaiian Certification of Live Birth (COLB), purported to be Soetoro's on their websites. There are several problems with this. The image posted on dailykos.com, factcheck.org and fightthesmears.com has been deemed an altered and forged document according to document image specialists. Moreover, even if this document purported to be Soetoro's Certification of Live Birth was an accurate document, it still could not prove "natural born" U.S. citizenship status. The Hawaii Department of Health issues a Certification of Live Birth to births that occurred abroad in foreign countries as well as births that occurred at home and not in a hospital. Certifications of Live Birth are issued to those born as "naturalized" U.S. citizens as well as "natural born" U.S. citizens. It should be

noted, Soetoro's sister, Maya Soetoro-Ng was born in Indonesia in 1970. She was born a "natural" citizen of Indonesia. However, her birth was registered in Hawaii as a birth abroad and she is only a "naturalized" citizen, not "natural born"; despite this she was issued a Hawaiian Certification of Live Birth (COLB).

27.     A Certification of Live Birth is **<u>not</u>** sufficient evidence to prove one is  in fact a "natural born" U.S. citizen.   In fact, a Certification of Live birth is not even sufficient evidence  of Hawaiian heritage for the Department of Hawaiian Home Lands (DHHL) to secure a land lease for someone.

28.     The Department of Hawaiian Home Lands is governed by the Hawaiian Homes Commission Act of 1920, enacted by the U.S. Congress to protect and improve the lives of native Hawaiians. The act created a Hawaiian Homes Commission to administer certain public lands, called Hawaiian home lands, for homesteads.

29.     As stated in the Hawaiian Home Lands manual regarding applying for Hawaiian Home Lands on Page seven [7] of text (Page eleven [11] of the PDF file), attached as **EXHIBIT "B"**, in order to qualify for a Hawaiian Home Land Lease, you must be at least fifty percent [50%] native Hawaiian by blood, and not by marriage or adoption.  In order for the DHHL to process an  application, DHHL utilizes information that is found only on the original Certificate of Live Birth, which is either black or green.  This is a more complete record of your birth than the Certification of Live Birth (a computer-generated printout).

30.     Additionally, Dr. Fukino, Director of the Hawaiian Department of Health released a press release stating she saw Soetoro's "vault" version birth certificate in a file.  Although, Dr. Fukino does not claim Soetoro was born in Hawaii (or the United States, for that matter), she does confirm that the "vault" version birth certificate exists, see **EXHIBIT "C"**.  Once

again, Soetoro refuses to release access to this "vault" version birth certificate which, if it were legitimate, would show doctors' signatures, city, state and country of birth, and of course would solve the issue of where he was in fact born.

31.     It appears that Soetoro became an Indonesian citizen.   When Soetoro was approximately four (4) years old his parents divorced and thereafter, Soetoro's mother, Stanley Ann Dunham, married Lolo Soetoro, a citizen of Indonesia.   Evidence points to the fact that Lolo Soetoro either signed a government form legally "acknowledging" Soetoro as his son or "adopted" Soetoro, either of which changed any citizenship status Soetoro had to a "natural" citizen of Indonesia.

32.     At the time that Defendant Barry Soetoro was in Indonesia, all Indonesian students were required to carry government identity cards or ***Karty Tanda Pendudaks***, as well as family card identification called a ***Kartu Keluarga***.   The *Kartu Keluarga* is a family card which bears the legal names and citizenship status of all family members.

33.     Soetoro  was registered in a public school as an Indonesian citizen by the name of Barry Soetoro and his father was listed as Lolo Soetoro, M.A.   Indonesia did not allow foreign students to attend their public schools in the late 1960's or 1970's, and any time a child was registered for a public school, the child's name and citizenship status were verified through the Indonesian Government.   See Constitution of Republic of Indonesia (*Undang-Undang Dasar Republik Indonesia 1945*), Chapter 13, Law No. 62 of 1958 (all citizens of Indonesia have a right to education).   The school record, attached hereto as **Exhibit "D"**, indicates that Soetoro's name is "Barry Soetoro;" his nationality is "Indonesia;" and his religion as "Islam".   There was no way for Soetoro to have attended school in Jakarta, Indonesia legally unless he was an Indonesian citizen, as Indonesia was under tight rule and

was a Police State.  See Constitution of Republic of Indonesia (*Undang-Undang Dasar Republik Indonesia 1945*), Law No. 62 of 1958.  These facts indicate that Soetoro is an Indonesian citizen, and therefore he is not eligible to be President of the United States.

34.     Under Indonesian law, when a male acknowledges a child as his son, it deems the son, in this case Soetoro, an Indonesian State citizen.  Constitution of Republic of Indonesia, Law No. 62 of 1958 concerning Immigration Affairs and Indonesian Civil Code (Kitab Undang-undang Hukum Perdata) (KUHPer) (Burgerlijk Wetboek voor Indonesie).

35.     Furthermore, under the Indonesian adoption law, once an Indonesian citizen adopts a child, the adoption severs the child's relationship to the birth parents, and the adopted child is given the same status as a natural child and the child takes the name of his step-father, in this case, Soetoro.  See Indonesian Constitution, Article 2**.**

36.     The Indonesian citizenship law was designed to prevent apatride (stateless) or bipatride (dual) citizenship.  Indonesian regulations recognized neither apatride nor bipatride (stateless or dual) citizenship.  Since Indonesia did not allow dual citizenship; neither did the United States (since the United States only permitted dual citizenship when 'both' countries agree); and since Soetoro was a "natural" citizen of Indonesia, the United States would not step in or interfere with the laws of Indonesia.  Hague Convention of 1930.

37.     As a result of Soetoro's Indonesian  "natural" citizenship status, Soetoro could never regain U.S. "natural born" status, if he in fact he ever held such, which we doubt.  Soetoro could have **only** become "naturalized" if the proper paperwork were filed with the U.S. State Department, after going through U.S. Immigration after his return to the United States; in which case, Soetoro would have received a Certification of Citizenship indicating "naturalized."

38.     Plaintiff is informed, believes and thereon alleges Soetoro was never naturalized in the United States after his return.  Soetoro was ten (10) years old when he returned to Hawaii to live with his grandparents.  Soetoro's mother did not return with him.  Therefore, it appears that she did not apply for citizenship for Soetoro in the United States.  If citizenship for  Soetoro had been applied for in 1971, Soetoro would have a Certification of Citizenship.  If Soetoro returned in 1971 to Hawaii without going through U.S. Immigration, today he would be an "illegal alien" – and obviously not able to serve as President, but also his term as a United States Senator from Illinois for nearly four (4) years was illegal.  Plaintiff believes Soetoro might have reentered the United States at age ten (10) by showing a copy of his aforementioned Hawaiian Certification of Live Birth or his Indonesian Passport.

39.     Moreover, Plaintiff has been unable to locate any legal documents wherein Soetoro's name was legally changed from Barry Soetoro to Barack Hussein Obama.  Soetoro's silence on these issues is deafening and his refusal to release such records to prove that none of this occurred results in his status as Acting Commander in Chief at best, and a willful action on his part to deceive the Armed Forces of the United States so that he may wield power that is in non-compliance with the United States Constitution.

40.     Plaintiff is literally caught between a rock and a hard place.  If reactivated, he comes under a duty to uphold the Constitution of the United States and to obey lawful orders.  He would come under a duty, under at least certain circumstances, to disobey unlawful orders.  He would come under a duty to support and defend the Constitution against all enemies, both foreign and domestic.  But to whom will these duties be owed from January 20, 2009 on?  And against whom will these duties operate?  Soetoro or Biden?

41.     This dilemma is particularly distressful to the Plaintiff in light of the current state of the law on obeying or disobeying unlawful orders. The Armed Forces themselves construe their oath to obey orders to require only that **they obey lawful orders**. See the *Uniform Code of Military Justice (UCMJ) 809.ART.90 (20*) (military personnel need only obey the "lawful command of his superior officer"); *891.ART.91 (2)*, (servicemember must obey the "lawful order of a warrant officer"; *892.ART.92 (1)* servicemember must obey the "lawful general order"), and *892.ART.92 (2)* ("lawful order"). And the courts have recognized even the affirmative duty of servicemembers to disobey unlawful orders, most notably in the notorious "My Lai Massacre" case, <u>United States v. Calley</u>, 22 USCMA 534, 48 CMR 19 (1973).

42.     In the instant case, the first question Plaintiff is concerned about is, "Does <u>United States v. New</u>, 55 M.J. 95 (2001), apply to a case in which the claim by the person declaring that he is President is a claim that is false? And does this vary according to whether the claim to be President is 'palpably illegal on its face?'" See <u>New</u>, 55 M.J. at 108. <u>U.S. v. New</u> applies on its face to a soldier's duty to obey legal orders and disobey certain illegal orders, of course. But does it also apply with respect to the underlying question of whether the person giving the orders is even legitimately in office to give those orders in the first place?

43.     Plaintiff faces the possibility of a conflict in his duties and multiple claims against him for the performance of these duties. It has been held that Interpleader may be brought even though no demand has yet been made on a Plaintiff for the property or obligation in question. <u>Dunbar v. United States</u>, 502 F.2d 506 (5th Cir. 1974). Instead, the mere fact that the Plaintiff has a real, reasonable, bona fide fear of exposure to multiple claims or the hazards and vexation of conflicting claims is sufficient. <u>American Fidelity Fire Insurance</u>

*Co. v. Construcciones Werl, Inc.*, 407 F. Supp. 164 (D. Virgin Islands 1975). See also, *Underwriters at Lloyd's v. Nichols*, 363 F.2d 357 (8th Cir. 1966) (in such circumstances, court has a duty to allow Interpleader).

44.     Plaintiff especially asks this Court to keep in mind that if Soetoro is sworn in, he could be blackmailed by anyone possessing *prima facie* evidence of his lack of natural-born citizenship.   The blackmail could be for money, or could be for changing policy, whether foreign or domestic.

45.     Plaintiff fears the hazards and vexations of multiple conflicting orders and responsibilities with respect to his aforementioned duties, all of which may interfere with, and may possibly sever, their relationships with all those above him in the chain of command, including, but not limited to, the Acting President or President, and all of which may interfere with, and may possibly sever, his  employer/employee relationship with the Department of Defense.   These hazards and vexations can include court-martials, incarceration, reduction in rank, loss of benefits and privileges, a dishonorable discharge, and claims against him for damages, all of which might come, possibly in contradictory manner, from more than one source of authority, or at least from more than one claimed source of authority, above him.   Each of these injuries, and all of them, would constitute irreparable harm to the Plaintiff.   With respect to relief from each of these injuries, and all of them, damages will not suffice for Plaintiff, and there is no adequate remedy at law.

46.     It is particularly important to the Plaintiff to know whether Soetoro is eligible to be President before Plaintiff  is reactivated because if Soetoro issues an order to reactivate him, he will have to know whether that is an order he is required to obey, or perhaps (at least in certain cases) whether that is even an order he is required to disobey.   The evidence that

Soetoro is not a "natural-born" citizen is so substantial that as things stand right now, unless this Court affirmatively declares that Soetoro is indeed constitutionally qualified to be President, Plaintiff will be of the opinion that he must refuse to recognize as being lawful the reactivation order and any other orders to him pursuant to the reactivation order.

47.     If the ordinary processes of law would then be available to the Plaintiff for a resolution of these conflicts upon his  reactivation, perhaps his distress today would not be quite as pronounced as it is.  But the ordinary processes of law would not be available to the Plaintiff in the event that he is reactivated.  As this Court itself has held (and as was affirmed by the D.C. Circuit), Congress has by statute precluded members of the Armed Forces from having access to the Article III Courts until and unless they have first disobeyed an order and have been court-martialed for having done so, and all their appeals in the military courts have been  exhausted. *United States ex rel. New v. Perry*, 919 F. Supp. 491 (D.D.C. 1996); *aff'd sub nom. New v. Cohen*, 129 F.3d 639 (D.C. Cir. 1997), *cert. den.*, 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513.

48.     Thus, the ordinary processes of the law in the Article III Courts are not available to the Plaintiff for a consideration of his plight once he is reactivated and deemed to be in active status.  This, of course, adds to all the other grounds the Plaintiff has for having a real, reasonable, bona fide fear of exposure to multiple claims or the hazards and vexation of conflicting claims.

49.     Plaintiff's concern over how to conduct himself, and his concern over multiple conflicting civil and criminal claims against him if Soetoro is sworn in is further increased by a recent Supreme Court decision, *Nguyen v. United States*, 539 U.S. 69 (2003).  In *Nguyen* the Supreme Court took note of the fact that the usual rule regarding the acts of *de facto*

officers is that ordinarily they are equally valid as those of *de jure* officers. The Court held nonetheless that the judgment of the Ninth Circuit had to be vacated on the grounds that there was a constitutional defect in the authority of the Article IV Court Judge to hear the appeals. *Nguyen v. United States*, 539 U.S. 69, 77-81, 123 S.Ct. 2130, 2135-2137, 156 L.Ed.2d 64, 75-78 (2003). Thus it is the case that, by the Supreme Court's own jurisprudence, Plaintiff Hollister will not have reasonable notice ahead of time as to which orders of Barry Soetoro, if he is the *de facto* President and not the *de jure* President, will be orders which are valid, and which Plaintiff must obey, or which orders may not be valid, and which Plaintiff would be expected to disobey.

50.     Plaintiff is in need of the assistance of this Court. Without a determination by competent authority as to whether Soetoro is or isn't constitutionally eligible to be President, the Plaintiff will be left on his own to determine his duties should he receive what is purported to be his reactivation orders from Soetoro, or conflicting orders from his superiors in the chain of command, or orders which may conflict with his duty to support and defend the Constitution. In that respect, the Plaintiff retains an interest in the alleged properties at issue in this case. Accordingly, if this Court does find that Soetoro is indeed constitutionally qualified to hold the Office of President, Plaintiff will need for this Court to base such a finding upon a clear showing by affirmative evidence, consistent with Soetoro's burden of proof under Interpleader, that Soetoro is indeed  a "natural born" United States citizen and qualified to be President in order to reduce any possibility that the deference to this Court might start to weaken among those above them in the chain of command with respect to this most crucial issue concerning the various duties of all members of the Armed Forces of the United States.

51.     This Court has to act now.  Judgment on the merits is the only thing that can prevent a horrible state of affairs for the Plaintiff and the members of our Armed Forces, the Courts and the nation. Plaintiff, members of the Armed Forces and the civilian populace have to know, and they have a right to know, who is lawfully entitled to be the Commander-in-Chief of the Armed Forces of the United States---who is lawfully entitled to "push the button", and who is not.

52.     In that hour when---God forbid---it actually becomes necessary to decide, one way or the other, whether to use America's nuclear arsenal, will the senior members of our military be under a legal duty to obey the orders of the would-be Commander-in-Chief, or will they be under a legal duty to disobey the order of an apparent enemy (foreign, or domestic) of the Constitution who holds the office of President?  We ask the Court to bear in mind that, depending on what facts are ascertained at trial, the Court may conclude that Soetoro is in fact, right now, an illegal alien.

53.     The bottom line, then, is this: As things stand now, without this Court's intervention, the Plaintiff in the instant case will be left completely out in the cold following Inauguration Day if he should happen to face a possible conflict between his duties to obey lawful orders on the one hand and his duties to disobey unlawful orders and defend the Constitution on the other hand, particularly if the unlawful order is "palpably illegal on its face" (*New*, 55 M.J. at 108), whatever his  "interpretation of applicable law" (*Ibid.*) may be, especially if the would-be Commander-in-Chief's claim to hold office is palpably subject to disbelief simultaneously.  And if this is the case with respect to this Plaintiff, what then will likewise be the case for the Joint Chiefs of Staff if Soetoro is in fact sworn in?  Dare they

speak up beforehand, if no national crisis is at hand? And will it be too late for them to speak up if in fact a national crisis does later on develop?

54. Plaintiff moves this Court for the Court's Orders to be issued nunc pro tunc in the event this Court declares Soetoro to be constitutionally ineligible to serve as President of the United States, after Soetoro and Biden have been sworn in.


**FIRST CAUSE OF ACTION**
**(Against All Defendants)**
**Claim for Declaratory and Injunctive Relief**
**Interpleader**
**28 U.S.C. § 1335**

55. Plaintiff hereby incorporates Paragraphs 1 through 54 as if fully set forth herein.

56. Plaintiff is in possession of certain property. This property consists of the rights pertaining to the duties owed by the Plaintiff to the Commander-in-Chief of the Armed Forces of the United States and to all others above him in his chain of command, and this property also consists of certain relationships. Said duties also constitute obligations owed by the Plaintiff to the Commander-In-Chief of the Armed Forces of the United States and to all others above him in his chain of command. The rights pertaining to each of these duties is worth Five Hundred [$500.00] Dollars or more. The rights pertaining to each of these relationships is worth Five Hundred [$500.00] Dollars or more. Plaintiff will deposit with this Court, if necessary, a Bond in the amount of Two Thousand Five Hundred [$2,500.00] Dollars for the combined sum of the properties that the Plaintiff possesses pertaining to the duties and relationships alleged in this Complaint.

57. Plaintiff is also in possession of Soetoro's Indonesian School Record showing his name as Barry Soetoro and his citizenship status as Indonesian, and Plaintiff is in possession

of his discharge document and has requested copies of his own enlistment papers. The document denominated as Soetoro's Indonesian School Record showing his name as Barry Soetoro and his citizenship status as Indonesian has a value of Five Hundred [$500.00] Dollars or more; Plaintiff's discharge document has a value of Five Hundred [$500.00] or more and has been deposited with this Court. Plaintiff has requested copies of his enlistment papers, which likewise have a value of Five Hundred [$500.00] Dollars or more, and copies of these documents will be deposited with this Court once they are received from the United States Department of Defense. Of course, Plaintiff's original enlistment papers are in the possession of the United States Department of Defense.

58. Plaintiff knows that each of the Defendants, and those acting under either of them, may have competing rights between themselves to the property rights in these duties, relationships, and documents, and the right to claim all the property rights with respect to all of these duties, relationships, and documents shall belong to either Soetoro or Biden as of Noon, Eastern Standard Time, on January 20, 2009, but Plaintiff does not know which of these two persons may properly claim the property rights in these duties, relationships, and documents.

59. Plaintiff has a real, reasonable, bona fide fear of exposure to multiple claims or the hazards and vexation of conflicting claims brought by either or both of the Defendants, or by those acting under either of them.

60. Likewise, the document denominated as Soetoro's Indonesian School Record showing his name as Barry Soetoro and his citizenship status as Indonesian, which we have filed with this Court as **EXHIBIT "D"**, is a chattel of peculiar value not fungible with other chattels, and the Plaintiff has a real, reasonable, bona fide fear that he could be subject to

injunctive relief over it and possible criminal prosecution by Soetoro, Biden or those acting under either of them for unlawfully withholding it.

61.    Plaintiff's discharge documents, which are  filed with this Court as **EXHIBIT "A"**, and his enlistment papers are also chattels of a peculiar value not fungible with other chattels, and the Plaintiff has a real, reasonable, bona fide fear that if he is expelled from the military by Soetoro or Biden or by those acting under either of them, the substance of the provisions of those papers would lose much of their meaning and value.

62.    By virtue of these fears and concerns, which, if realized, would subject Plaintiff to irreparable harm as to which damages would not suffice, and as to which there is no adequate remedy at law, Plaintiff is entitled to use Interpleader under 28 U.S.C. § 1335 to join Soetoro and Biden as Defendants to cause them to come forward with the proof of Soetoro's constitutional eligibility to serve as President of the United States pursuant to Article II, § 1, Cl. 5 of the U.S. Constitution and proof as to which of them may be entitled to the rights pertaining to the property which the Plaintiff alleges that he holds, so that Plaintiff might receive from this Court a declaration of the Plaintiff's rights and duties with respect to each Defendant, and Injunctive Relief as may be appropriate against either or both Defendants on behalf of the Plaintiff.


**WHEREFORE,** Plaintiff respectfully prays that this Court:

A.    Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as a natural person is hereby **<u>constitutionally ineligible</u>** to be President of the United States pursuant to Article II, § 1, Cl. 5 of the Constitution of the United States and the same is hereby Ordered to refrain from assuming, or taking the oath of, said office or exercising the duties and

functions thereof, and to refrain from interfering with, or claiming, the properties and/or the obligations of the Plaintiff alleged in this Complaint; or

B.      Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as *de facto* President of the United States *in posse* is hereby **constitutionally ineligible** to be President of the United States pursuant to Article II, § 1, Cl. 5 of the Constitution of the United States and the same is hereby Ordered to refrain from assuming, or taking the oath of, said office or exercising the duties and functions thereof, and to refrain from interfering with, or claiming, the properties and/or the obligations of the Plaintiff alleged in this Complaint; or

C.      Declare, if this Court finds on the merits that Barry Soetoro a/k/a Barack Hussein Obama is **not** eligible to be President after Barry Soetoro a/k/a Barack Hussein Obama has been sworn in as President, that Barry Soetoro a/k/a Barack Hussein Obama is further barred and prohibited *nunc pro tunc* from holding the Office of President and from exercising the functions and duties of said Office, and from interfering with, or making any claim to, the properties and/or the obligations of the Plaintiff alleged in this Complaint; and

D.      Order Plaintiff to refrain from recognizing Barry Soetoro a/k/a Barack Hussein Obama as President of the United States and Commander-in-Chief of the Armed Forces thereof; or

E.      Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as a natural person is hereby eligible to be President of the United States, pursuant to Article II, § 1, Cl. 5 of the Constitution of the United States, and that he may rightfully claim the properties and/or the obligations of the Plaintiff alleged in this Complaint upon assuming the Office of President of the United States; or

F.      Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as *de jure* President of the United States *in posse* is hereby eligible, pursuant to Article II § 1, Cl. 5 of the Constitution of the United States, to be President of the United States, and that he may rightfully claim the properties and/or the obligations of the Plaintiff alleged in this Complaint upon assuming the Office of President of the United States; and

G.      Order Plaintiff to recognize Barry Soetoro a/k/a Barack Hussein Obama as *de jure* President of the United States and Commander-in-Chief of the Armed Forces thereof from the time of his inauguration into that office and Joseph R. Biden as *de jure* Vice-President of the United States from the time of his inauguration into that office, for the term of each office beginning at Noon, Eastern Standard Time, January 20, 2009; or

H.      Order Plaintiff to look to Joseph R. Biden for Orders if this Court finds Barry Soetoro a/k/a Barack Hussein Obama constitutionally ineligible pursuant to Article II, § 1, Cl. 5 of the U.S. Constitution; and

I.      Retain Jurisdiction of this action to ensure the Court's Orders are being fully enforced; and

J.      Award Plaintiff his Attorney Fees and Costs and Grant Plaintiff such other and further relief as this Honorable Court deems just and proper.

### COUNT TWO
### (Against All Defendants)
### Claim for  Declaratory and Injunctive Relief

### BIVENS ACTION

63.      Plaintiff hereby incorporates Paragraphs 1 through 62 as if fully set forth herein.

64.      A Bivens Action is an action against Federal Employees for redress under the same criteria as 42 U.S.C § 1983 actions, which is inapplicable to Federal employees.

65.     Article III of the Constitution requires the Federal Courts to review only "cases and controversies," which require Plaintiffs seeking to invoke a federal court's authority, other than in a claim based upon Interpleader or a *Bivens* claim, to show "(1) actual or threatened injury (2) suffered as a result of the allegedly illegal conduct of the Defendant, which (3) fairly can be traced to the challenged action and (4) is likely to be redressed by a favorable decision." *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1353 (9th Cir. 1994). Where a Plaintiff who is not proceeding in a case based upon interpleader or *Bivens* claim cannot satisfy these requirements, the Court lacks jurisdiction.

66.     Because Plaintiff alleges a *Bivens* claim, on the grounds that he is challenging a possible administrative action, he need demonstrate only a realistic danger of sustaining an injury to his rights and need not await the consummation of the threatened injury  in order to obtain preventive relief, such as exposing himself to actual arrest or prosecution as a result of conflicting opinions with his Superior Officers in the Military as to whether an Order issued by Soetoro is a lawful Order or an Unlawful Order, and Plaintiffs refusal to abide by said Order. Plaintiff is stating an intention to engage in conduct arguably affected with a constitutional interest but proscribed by statute and there exists a credible threat of prosecution thereunder, Plaintiff may bring an action for declaratory or injunctive relief. *Steffel v. Thompson*, 415 U.S. 452 (1974); *Wooley v. Maynard*, 430 U.S. 705, 707 -708, 710 (1977); *Babbitt v. United Farm Workers*, 442 U.S. 289, 297 -305 (1979) (finding some claims ripe, others not). Compare *Doe v. Bolton*, 410 U.S. 179, 188 -189 (1973), with *Roe v. Wade*, 410 U.S. 113, 127 -128 (1973). See also *Planned Parenthood v. Danforth*, 428 U.S. 52 (1976); *Colautti v. Franklin*, 439 U.S. 379 (1979)

67.     Similarly, the reasonable certainty of the occurrence of the perceived threat to a constitutional interest is sufficient to afford a basis for bringing a challenge, provided the court has sufficient facts before it to enable it to intelligently adjudicate the issues. *Buckley v. Valeo*, 424 U.S. 1, 113 -118 (1976); *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 138 -148 (1974) (holding some but not all the claims ripe). See also *Goldwater v. Carter*, 444 U.S. 996, 997 (Justice Powell concurring) (parties had not put themselves in opposition)

68.     There are serious questions into the eligibility of Soetoro to serve as President of the United States pursuant to the United States Constitution.  It is believed Soetoro is not a "natural born" citizen and in fact may be an Indonesian Citizen, therefore making him ineligible and unqualified pursuant to the Constitution to legally serve as President of the United States.  As a result of the questions of Soetoro's citizenship status and his constitutional eligibility to serve as President of the United States, any orders he issues and/or signs may be illegal Orders.

69.     Soetoro was born in Mombosa, Kenya, and his mother was not old enough to confer U.S. "natural born" citizenship status to Soetoro, *United States of America v. Cervantes-Nava*, 281 F.3d 501 (2002), *Drozd v. I.N.S.*, 155 F.3d 81, 85-88 (2d Cir.1998).

70.     Additionally, Soetoro lost any "naturalized" United States citizenship status he might ever have had when he became a "natural" citizen of Indonesia.  Soetoro's mother married Lolo Soetoro an Indonesian Citizen in or about 1964/1965.  Lolo Soetoro acknowledged Soetoro as his son and/or adopted Soetoro thus changing his citizenship status to a "natural" citizen of Indonesia. Under Indonesian law, when a male acknowledges a child as his son, it deems the son, in this case Soetoro, as an Indonesian State citizen. Constitution of Republic of Indonesia, Law No. 62 of 1958,  Law No. 12 concerning Citizenship of

Republic of Indonesia, Law No. 9 concerning Immigration Affairs and Indonesian Civil Code (Kitab Undang-undang Hukum Perdata) (KUHPer) (Burgerlijk Wetboek voor Indonesie). Republic of Indonesia Constitution 1945, Chapter X, Citizens and Residents, Article 26 states *"(1) Citizens shall consist of indigenous Indonesian peoples and persons of foreign origin who have been legalized as citizens in accordance with law. (2) Residents shall consist of Indonesian citizens and foreign nationals living in Indonesia.*" Soetoro was a "natural" citizen of Indonesia and not a foreign national, as proven by his Indonesian school registration

71.     Moreover, Plaintiff is unaware of Soetoro's legal name. Is it Barry Soetoro or Barack H. Obama? Soetoro's last legal name shows his name as Barry Soetoro and his citizenship status is Indonesian according to his school record, See **EXHIBIT "D"**.

72.     Plaintiff is retired Military, and although he is retired he still took the Oath of Enlistment to uphold the U.S. Constitution against enemies both foreign and domestic, and adhere to any Orders issued by the President of the United States. Plaintiff is in the Individual Ready Reserve and is subject to recall into the Military upon Presidential Order and is required to uphold his Oath of enlistment. Presidential recall can happen at any time.

73.     Due to the questions into Soetoro's citizenship status and his eligibility and/or ineligibility pursuant to Article II, § I, Cl. 5 of the United States Constitution, Plaintiff is seeking a Declaratory Judgment from this Court either declaring Soetoro is in fact a "natural born" U.S. citizen and eligible to serve as President of the United States; or declaring that Soetoro is not a "natural born" citizen and is ineligible to serve as President of the United States.

74.     Plaintiff can be recalled into the Military at any time, and as things stand now, because the evidence that Soetoro is not qualified to be President is so substantial, Plaintiff will consider himself obligated by law to refrain from honoring or abiding by any Order of Soetoro until it is determined that Soetoro is in fact a "natural born" citizen and constitutionally eligible to serve as President of the United States.

75.     As things stand now, because the evidence that Soetoro is not qualified to be President is so substantial, Plaintiff will consider Soetoro to be an enemy of the Constitution Thus, Plaintiff will refuse to abide by any order issued by Soetoro until the issues of citizenship status and constitutional eligibility to serve as President of the United States pursuant to the U.S. Constitution are resolved.

76.     Soetoro and Biden and the United States government face the danger that they may be deprived of the performance of the duties and fulfillment of the  obligations alleged in this Complaint which Plaintiff will owe to the Commander-In-Chief, and that they may be deprived of the continuation of the relationships with the Plaintiff alleged this Complaint, if Soetoro issues Orders recalling Plaintiff and Plaintiff refuses to adhere to Soetoro's Orders, and it is later determined that Soetoro is in fact a "natural born" citizen and that all his Orders were in fact legal Orders. Soetoro, Biden and the  U.S. Government will then additionally be deprived of the costs involved in replacing Plaintiff in the Military recall, the cost of criminally prosecuting Plaintiff for his failure to adhere to Soetoro's Orders and the cost of all civil litigation brought against Plaintiff for recovery of the damages.

77.     Since Plaintiff is will be in the military if he is recalled to active service, he is will be considered a Federal employee if he is so reactivated.  If the citizenship status of Soetoro and Soetoro's constitutional eligibility to serve as President of the United States are not

decided immediately, as things stand now, Plaintiff will refuse to abide by Soetoro's Orders, and will be doing so under the color of law in his official capacity as an Officers of the Military, which could subject him to Court marshaling if his superior Officers do not agree.

78.	Until the issues regarding Soetoro's citizenship status and constitutional eligibility to serve as President of the United States pursuant to the U.S. Constitution are resolved, Defendant will be deprived of his fundamental rights secured by the Fourteenth Amendment of the United States Constitution pertaining to due process and equal protections of the laws.

79.	For this reason, it is extremely important for the Court to issue Plaintiff Declaratory relief to resolve the critical issue of Soetoro's citizenship status and eligibility to serve as President of the United States. It is further extremely important for this Court issue Injunctive relief against Soetoro, if the Court determines Soetoro to be ineligible to serve as President of the United States, to prohibit Soetoro from issuing any Order recalling Plaintiffs.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

A.	Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as a natural person is hereby **constitutionally ineligible** to be President of the United States pursuant to Article II, § 1, Cl. 5 of the Constitution of the United States and the same is hereby Ordered to refrain from assuming, or taking the oath of, said office or exercising the duties and functions thereof, and to refrain from interfering with, or claiming, the properties and/or the obligations of the Plaintiff alleged in this Complaint; or

B.	Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as *de facto* President of the United States *in posse* is hereby **constitutionally ineligible** to be President

of the United States pursuant to Article II, § 1, Cl. 5 of the Constitution of the United States and the same is hereby Ordered to refrain from assuming, or taking the oath of, said office or exercising the duties and functions thereof, and to refrain from interfering with, or claiming, the properties and/or the obligations of the Plaintiff alleged in this Complaint; or

C.     Declare, if this Court finds on the merits that Barry Soetoro a/k/a Barack Hussein Obama is **not** eligible to be President after Barry Soetoro a/k/a Barack Hussein Obama has been sworn in as President, that Barry Soetoro a/k/a Barack Hussein Obama is further barred and prohibited *nunc pro tunc* from holding the Office of President and from exercising the functions and duties of said Office, and from interfering with, or making any claim to, the properties of the Plaintiff and/or the obligations alleged in this Complaint; and

D.     Order Plaintiff to refrain from recognizing Barry Soetoro a/k/a Barack Hussein Obama as President of the United States and Commander-in-Chief of the Armed Forces thereof; or

E.     Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as a natural person is hereby eligible to be President of the United States, pursuant to Article II, § 1, Cl. 5 of the Constitution of the United States, and that he may rightfully claim the properties and/or the obligations of the Plaintiff alleged in this Complaint upon assuming the Office of President of the United States; or

F.     Declare Barry Soetoro a/k/a Barack Hussein Obama, in his capacity as *de jure* President of the United States *in posse* is hereby eligible, pursuant to Article II § 1, Cl. 5 of the Constitution of the United States, to be President of the United States, and that he may rightfully claim the properties and/or the obligations of the Plaintiff alleged in this Complaint upon assuming the Office of President of the United States; and

G.     Order Plaintiff to recognize Barry Soetoro a/k/a Barack Hussein Obama as *de jure* President of the United States and Commander-in-Chief of the Armed Forces thereof from the time of his inauguration into that office and Joseph R. Biden as *de jure* Vice-President of the United States from the time of his inauguration into that office, for the term of each office beginning at Noon, Eastern Standard Time, January 20, 2009; or

H.     Order Plaintiff to look to Joseph R. Biden for Orders if this Court finds Barry Soetoro a/k/a Barack Hussein Obama constitutionally ineligible pursuant to Article II, § 1, Cl. 5 of the U.S. Constitution; and

I.     Retain Jurisdiction of this action to ensure the Court's Orders are being fully enforced; and

J.     Award Plaintiff his Attorney Fees and Costs and Grant Plaintiff such other and further relief as this Honorable Court deems just and proper.


                                        Respectfully submitted,


Dated:  February 9, 2009            s/ Philip J. Berg
                                    _____
                                    Philip J. Berg, Esquire
                                    *Attorney for Plaintiff*
                                    555 Andorra Glen Court, Suite 12
                                    Lafayette Hill, PA   19444-2531
                                    Identification   No.  09867
                                    (610) 825-3134



Dated:  February 9, 2009            s/ Lawrence J. Joyce
                                    _____
                                    Lawrence J. Joyce, Esquire
                                    *Attorney for Plaintiff*
                                    1517 N. Wilmot Road, Suite 215
                                    Tucson, AZ 85712
                                    Arizona Bar No. 020856
                                    (520) 584-0236

Dated:  February 9, 2009

s/ John D. Hemenway

John D. Hemenway
Hemenway & Associates
4816 Rodman Street NW
Washington, D.C. 20016
(202) 244-4819
D.C. Bar No. 379663

EXHIBIT "A"

# THE UNITED STATES OF AMERICA

*To all who shall see these presents, greeting:*

*Know ye, that reposing special trust and confidence in the patriotism, valor, fidelity and abilities of* GREGORY SCOTT HOLLISTER *, I do appoint him* **Second Lieutenant** *in the* **Regular**

# United States Air Force

*to rank as such from the* **thirty-first** *day of* **May** *, nineteen hundred and* **seventy-eight** *. This officer will therefore carefully and diligently discharge the duties of the office to which appointed, by doing and performing all manner of things thereunto belonging.*

*And I do strictly charge and require those officers and other personnel of lesser rank to render such obedience as is due an officer of this grade and position. And this officer is to observe and follow such orders and directions, from time to time, as may be given by the President of the United States of America, or other superior officers acting in accordance with the laws of the United States of America.*

*This commission is to continue in force during the pleasure of the President of the United States of America, under the provisions of those public laws relating to* **Officers of the Armed Forces of the United States of America** *and the component thereof in which this appointment is made.*

*Done at the City of Washington, this* **thirty-first** *day of* **May** *in the year of our Lord, one thousand nine hundred and* **seventy-eight** *and of the Independence of the United States of America, the* **two hundred and second year.**

*By the President:*



. IDENTIFICATION PURPOSES          SAFEGUARD IT.          AREAS RENDER FORM VOID

# DD FORM 214 WORKSHEET

| 1. NAME *(Last, First, Middle)* | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NO. |
|---|---|---|
| HOLLISTER GREGORY SCOTT | AIR FORCE -- REG AF | ███ ██ ████ |

| 4.a. GRADE, RATE OR RANK | 4.b. PAY GRADE | 5. DATE OF BIRTH *(YYMMDD)* | 6. RESERVE OBLIG. TERM. DATE |
|---|---|---|---|
| COLONEL | O6 | ██████ | Year N/A  Month  Day |

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY | 7.b. HOME OF RECORD AT TIME OF ENTRY *(City and state, or complete address if known)* |
|---|---|
| COLORADO SPRINGS CO | HORNELL NY |

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 8.b. STATION WHERE SEPARATED |
|---|---|
| 50 COMM GP (AFSPC) | FALCON AFB    CO |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE ☐ None |
|---|---|
| NOT APPLICABLE | Amount: $ 200,000 |

| 11. PRIMARY SPECIALTY *(List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.)* | 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|---|
| 020C0 - LOGISTICS COMMANDER 1 YR 04 MOS | a. Date Entered AD This Period | 1978 | May | 31 |
| C33S4 - COMMUNICATION AND INFORMATION/ | b. Separation Date This Period | 1998 | Jul | 31 |
| COMMANDER - 18 YRS 10 MOS | c. Net Active Service This Period | 20 | 02 | 01 |
| | d. Total Prior Active Service | 00 | 00 | 00 |
| | e. Total Prior Inactive Service | 00 | 00 | 00 |
| | f. Foreign Service | 01 | 11 | 19 |
| | g. Sea Service | 00 | 00 | 00 |
| | h. Effective Date of Pay Grade | 1996 | Aug | 01 |

**13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED** *(All periods of service)*

Defense Meritorious Service Medal, Meritorious Service Medal with 5 devices, Air Force Training Ribbon, Air Force Overseas Long Tour Ribbon, National Defense Service Medal with 1 device, Air Force SEE REMARKS

**14. MILITARY EDUCATION** *(Course title, number of weeks, and month and year completed)*

Air Command and Staff College - 40 weeks, Armed Forces Staff College - 9 weeks, Graduate Teleprocessing Science - 51 weeks, Squadron Officer School - 9 weeks, Communications Systems Officer - 32 weeks, Survival SEE REMARKS

| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No X | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes X | No | 16. DAYS ACCRUED LEAVE PAID 79.0 |
|---|---|---|---|---|---|---|

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | Yes | X No |
|---|---|---|

**18. REMARKS**

ITEM 13:    Longevity Service Award with 4 devices, Air Force Outstanding Unit Award with 1 device, Joint Meritorious Unit Award, Air Force Organizational Excellence Award with 2 devices, Legion of Merit.
ITEM 14:    Training - 4 weeks, Water Survival - 2 days, Squadron Officer School - 32 weeks, Cumputer System Staff Officer - 5 weeks, Air Command and Staff College (Corres) - 40 weeks, Air War College - 40 weeks, Joint C3 Staff and Operations Course - 6 weeks, Army War College - 44 weeks, Executive Forum on Communications-Computer - 1 week, Marine Corps Comm and Staff College - 43 weeks, Base Commander Course - 1 week.
Subject to Recall to active duty and/or annual screening.

| 19.a. MAILING ADDRESS AFTER SEPARATION *(Include Zip Code)* | 19.b. NEAREST RELATIVE *(Name and address - include Zip Code)* |
|---|---|
| ████████████████ | ALVIN D. PECK<br>2760 CLARENDON<br>COLORADO SPRINGS CO 80916 |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO CO     DIR. OF VET AFFAIRS | X Yes | No | 22. OFFICIAL AUTHORIZED TO SIGN *(Typed name, grade, title and signature)* |
|---|---|---|---|
| 21. SIGNATURE OF MEMBER BEING SEPARATED | | | RAYMOND E. NEEDS, TSGT, USAF<br>NCOIC, Personnel Relocations |

## SPECIAL ADDITIONAL INFORMATION *(For use by authorized agencies only)*

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE *(Include upgrades)* |
|---|---|
| VOLUNTARY RETIREMENT | HONORABLE |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| AFI 36-3203 | RBD | NOT APPLICABLE |

| 28. NARRATIVE REASON FOR SEPARATION |
|---|
| SUFFICIENT SERVICE FOR RETIREMENT |

| 29. DATES OF TIME LOST DURING THIS PERIOD | 30. MEMBER REQUESTS COPY 4 |
|---|---|
| NONE | initials |

DD Form 214WS, NOV 88, EG     *Previous editions are obsolete. Generated by Dept of Air Force PC-III*     **WORKSHEET**

1. NAME (LAST, FIRST, MI)   2. DEPARTMENT,COMPONENT AND BRANCH   3. SOCIAL SECURITY
HOLLISTER GREGORY SCOTT          AIR FORCE – REG AF

4a. GRADE, RATE, OR RANK     4b. PAY GRADE     4c. DATE OF SEPARATION
COLONEL                      O6                1998  Jul 31


Copy 5 - Louisiana Claims Control Center, UCX/UCFE, PO BOX 94246, Capital
Stations, Baton Rouge LA 70804-9246.
Copy 3 - Department of Veterans Affairs, Data Processing Center (214),
1615 E. Woodward St., Austin TX 78772.
------------------------------NOTHING FOLLOWS------------------------------

HOLLISTER GREGORY SCOTT

RAYMOND A. NIVENS, TSGT, USAF
NCOIC, Personnel Relocations

**EXHIBIT "B"**



# Loaʻa
# Ka ʻĀina
# Hoʻopulapula

## Applying for
## Hawaiian Home Lands

# Department of Hawaiian Home Lands
## State of Hawaiʻi

*Aloha kākou!*

*Welcome to the Hawaiian home lands program. The program has its roots in the Hawaiian Homes Commission Act of 1920, as amended. It provides native Hawaiians with several benefits that we hope will assist you and your ʻohana for generations to come. Entry into the program, however, depends largely upon you. In the course of applying for a homestead, you may find yourself embarking on a journey of discovery into your family's history. While it often takes time, for most people it is a process well worth the effort.*

*This booklet is designed to make your entry into the program as smooth and fruitful as possible. Like the ʻulu tree, the Hawaiian home lands program can provide sustenance for generations to come.*

*We look forward to serving you.*

*Aloha,*
*The Department of Hawaiian Home Lands*

*Me ka mālama `ana, ulu pono ke kumu lā`au*
*`ulu i kanu `ia a ho`opa`a `ia ma ka `āina ola mau.*
*Ho`olako ke kumu lā`au o`o*
*i nā mea `ai i nā kānaka e `ai i kāna hua.*



The breadfruit tree, planted and rooted in life sustaining land,
grows strong when it is cared for.
Year after year the mature tree provides nourishment to all who eat its fruit.

# Table of Contents

*2*    *Introduction*

*3*    *Eligibility Requirements*

*3*    *Tracing Your Genealogy*

*4*    *Primary Documents*

*7*    *Secondary Documents*

*9*    *Birth Certificates (Adoption)*

*9*    *Inconclusive Documents*

*9*    *Variation in Names or Single Names*

*10*   *Reasonable Basis for More Documentation*

*10*   *Where to Get Your Documents*

*10*   *Application Processing*

*12*   *Types of Homestead Leases*

*12*   *Homestead Lease Availability by Island*

*13*   *Available Residential Awards*

*13*   *Benefits of a Hawaiian Home Lands Homestead Lease*

*14*   *Applying for a Homestead Lease*

*15*   *Change in Applicant's Genealogical Information*

*15*   *Designation of Successor (Application Process only)*

*16*   *The Applicant's Responsibilities*

*18*   *Commonly Asked Questions by New Applicants*

*20*   *Commonly Asked Questions by Applicants Who Are
        on the Waiting List*

*21*   *Joining the `Ohana*

*23*   *Appendix*



Prince Jonah Kūhiō Kalanianaʻole

## *Introduction*

In the early 1900's Prince Jonah Kūhiō Kalanianaʻole and his supporters sought ways to revitalize the Hawaiian people.  Prince Kūhiō's vision of *ʻāina hoʻopulapula* or "restoration through the land" resulted in the passage of the "Hawaiian Homes Commission Act of 1920" (HHCA) by the United States Congress.  It was signed into law on July 9, 1921, by President Warren G. Harding.

The Act reserved 203,500 acres, "more or less," of public lands in the Territory of Hawaiʻi for homesteading by native Hawaiians.  These lands were called Hawaiian home lands.  Today, the Department of Hawaiian Home Lands (DHHL) is responsible for administering the Hawaiian home lands' program.  DHHL continues to strive for Prince Kūhiō's vision of returning the Hawaiian people to the land through the many benefits and programs it offers.



In order to make the application process as smooth as possible, there are certain things you need to know and do as an applicant. Since the land benefits offered by the Department of Hawaiian Home Lands (DHHL) are very valuable, it is important to understand that DHHL is responsible for maintaining the integrity of the HHCA in administering its programs. An essential element of this responsibility is requiring applicants to demonstrate, through documentation, that they are eligible for the program.

## Eligibility Requirements

To be eligible to apply for a Hawaiian home lands homestead lease, you must meet two requirements:

- You must be at least 18 years of age; and

- You must be a native Hawaiian, defined as "any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778." This means, you must have a blood quantum of at least 50 percent Hawaiian. This requirement remains unchanged since the HHCA's passage in 1921.

## Tracing Your Genealogy

The general rule of thumb in determining 50 percent blood quantum is to submit enough documentation tracing your genealogy to your full Hawaiian ancestor(s). Some applicants need only go back two generations – that is, to their grandparents.

Others may need to go back further, gathering pieces of information which eventually grow into a large family tree with roots beginning with full Hawaiian ancestors.

However, before starting your search for acceptable documents, *kūkā,* or consult with your `*ohana*. They are an invaluable source of information. Once you've "talked story," you should be better prepared to begin gathering the documentation needed to show eligibility for the program.

There are two categories of documents used in determining eligibility: primary and secondary.

## Primary Documents

The primary documents used to show you are of age and a qualified native Hawaiian are:

- A certified copy of **Certificate of Birth**;

- A certified copy of **Certificate of Hawaiian Birth,** including testimonies; or

- A certified copy of **Certificate of Delayed Birth**.

You will need the certified birth certificates for:

- Yourself;

- Your biological father; and

- Your biological mother.

The state Department of Health (DOH), Vital Records Section, records documents by island and district (geographically) and by the date of the event (chronologically).

If your biological parents' documents don't clearly prove that you have at least 50 percent Hawaiian ancestry, you will also need certified birth certificates for:

- Your biological father's parents; and

- Your biological mother's parents.

*Sample of the <u>PREFERRED</u> birth certificate:*

# <u>Certificate of Live Birth</u>

In order to process your application, DHHL utilizes information that is found only on the original ***Certificate*** of Live Birth, which is either black or green.  This is a more complete record of your birth than the ***Certification*** of Live Birth (a computer-generated printout).  Submitting the original ***Certificate*** of Live Birth will save you time and money since the computer-generated ***Certification*** requires additional verification by DHHL.

When requesting a certified copy of your birth certificate from the Vital Records Section of DOH, **let the clerk know you are requesting it "For DHHL Purposes," and that you need a copy of the original *Certificate* of Live Birth and not the computer-generated *Certification*.  If mailing in your request form, please fill in "For DHHL Purposes" in the "Reason for Requesting a Certified Copy" section.  (See example on page 6.)**

Please note that DOH no longer offers same day service.  If you plan on picking up your certified DOH document(s), you should allow at least 10 working days for DOH to process your request(s), OR four to six weeks if you want your certified certificate(s) mailed to you.

In the event the Vital Records Section does not have a birth certificate for any of your parents or grandparents, they will issue a "No-record" certification.  "No-record" certification means after searching its records, the DOH cannot find the requested birth certificates.  Please submit this "No-record" certification with your other documents to DHHL.

If you are adopted, your biological birth record is probably sealed.   In this instance, DHHL staff may be able to assist you in getting the ethnicity of your biological parents.  Additionally, depending on your particular circumstance the Family Court may be able to help you get the information you need.  If your adoption occurred in the State of Hawaiʻi, you may be able to get a copy of your original birth certificate.  Access to out of state adoption records, however, vary according to the respective jurisdiction.

## *Secondary Documents*

There are times when the birth certificates for yourself and/or your parents or grandparents are not available and you have gotten "No-record" certifications from DOH.  DHHL may accept secondary documents which assist in establishing family ties or blood quantum in place of primary documents.

**Department of
Hawaiian Home Lands
Chairman's Office**
1099 Alakea Street, Suite 2000
Honolulu, Hawai`i   96813
Telephone: (808) 586-3800
FAX: (808) 586-3899

**Information and Community
Relations Office**
Telephone: (808) 586-3840
FAX: (808) 586-3843

Writer:
*Michele Lum Molina*

Illustrator:
*Reiko N. Tom*

Design & Production:
*VideoPoint Productions, Inc.*

Printer:
*Pacific Printing & Publishing*

Hawaiian Language Translator:
*Carol Silva*

Mahalo to the **State Department of Health
Office of Health Status Monitoring**
for its continued support and assistance.

*This booklet is meant to assist you with the application process for obtaining Hawaiian home lands.  It is not an administrative rule book.  If you wish to view the Department of Hawaiian Home Lands' *Administrative Rules*, please contact the district office in your area.



*Department of Hawaiian Home Lands*
*State of Hawai`i*
*August 2000*

**EXHIBIT "C"**



# Hawaii Reporter
Freedom to Report Real News

## State Can't Legally Release Barack Obama's Birth Certificate, But State Health Department Verifies The Original is On File

By Dr. Chiyome Fukino, 10/31/2008 5:28:13 PM

There have been numerous requests for Sen. Barack Hussein Obama's official birth certificate. State law (Hawai'i Revised Statutes §338-18) prohibits the release of a certified birth certificate to persons who do not have a tangible interest in the vital record.

Therefore, I as Director of Health for the State of Hawai'i, along with the Registrar of Vital Statistics who has statutory authority to oversee and maintain these type of vital records, have personally seen and verified that the Hawai'i State Department of Health has Sen. Obama's original birth certificate on record in accordance with state policies and procedures.

No state official, including Governor Linda Lingle, has ever instructed that this vital record be handled in a manner different from any other vital record in the possession of the State of Hawaii.

*Dr. Chiyome Fukino is the director of the Hawaii Department of Health*

ELECTIONS 2008...

© 2009 Hawaii Reporter, Inc. | About Us | Terms of Service | Privacy Policy | Limitations of Liability

**EXHIBIT "D"**

REGISTRATION or GRADEBOOK

NO. 203.

1. The name of the pupil: Barry Soetoro

2. The place and date of birth: Honolulu 4-8-1961

3. The nation
        a. of Citizenship: Indonesia
        b. The foreign descendants:
        c. The ethnic group:

4. The religion: Islam

5. Address of the pupil: Menteng Dalam R001/R003

6. From which school (moved from) and what class: ???

7.      a. Date accepted: 1-1-1968 (January 1, 1968)
        b. Grade: I (First grade)

8.      a. The name of the parents Mr./Ms.: L. Soetoro M A (Lolo Soetoro)
        b. Occupation/Job: (???? Geography ????)
        (name of the mother will only be used if father is deceased)
        c. Address: Menteng Dalam R001/R003

9. The name of the guardian:
        (??? was filled up, ??? parents of the pupil were not available, already ???? ????
        because another thing )
        b. Occupation/Job:
        c. The address: Menteng Dalam R001/R003

10. Left this school:
        a. ?? was finished. Outside from the class:        The date:
        b. ?? recieved ?? the date:        NO.
        c. ?? the school to:

11. Other information:

No. 203.

1. Nama murid :     Barry Soetoro     L / P

2. Tempat dan tanggal lahir : Honolulu   4-9-61
3. Bangsa: a. Warga negara : Indonesia
      b. Keturunan asing :
      c. Suku bangsa :
4. Agama : Islam
5. Alamat murid : Ment. Dalam R005/RW03
6. Dari sekolah mana (dipindahkan) dan kelas berapa: Taman Kanak² Strada Asisi

7. a. Diterima disekolah ini tgl.: 1-1-1968
    b. Ditempatkan dikelas : 1

8. a. Nama orang tua Ajah/Ibu : L. Soetoro m/a.

    b. Pekerdjaan : Peg. Dinas Geografi Dit. Top. A.D.
       (nama ibu diisi, hanja djika ajah sudah meninggal)

    c. Alamat : Ment. Dalam R1005/RW03

9. a. Nama wali :
      (hanja diisi, djika orang tua murid tak ada, sudah meninggal atau karena hal lain)

    b. Pekerdjaan :
    c. Alamat :
10. Meninggalkan sekolah ini :

    A. Belum tamat. Keluar dari kelas _____ tanggal _____
       Sebab Pindah
       Kemana _____
    B. Tamat, menerima idjazah tanggal _____ No. _____
    C. Melandjutkan sekolah ke _____

11. Keterangan lain :

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GREGORY S. HOLLISTER, | : |
| | : |
| *Plaintiff* | : |
| *vs.* | : CIVIL ACTION NO. 1:08-cv-02254 JR |
| | : |
| BARRY SOETORO, et al | : |
| | : |
| *Defendants* | : |

## <u>CERTIFICATE OF SERVICE</u>

I, Philip J. Berg, Esquire, hereby certify that Plaintiff's First Amended Complaint was served via email this 9th day of February, 2009 upon the following:

Robert F. Bauer
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2003
rbauer@perkinscoie.com

s/ Philip J. Berg
_____
PHILIP J. BERG, ESQUIRE
*Attorney for Plaintiff*
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
(610) 825-3134