# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GREGORY S. HOLLISTER, | : | |
| | : | |
| *Plaintiff,* | : | |
| *vs.* | : | CIVIL ACTION NO. 1:08-cv-02254 JR |
| | : | |
| BARRY SOETORO, et al. | : | |
| | : | |
| *Defendants.* | : | |

## ORDER

### ON MOTION OF DEFENDANTS
### BARRY SOETORO a/k/a BARACK H. OBAMA and
### JOSEPH R. BIDEN TO DISMISS PLAINTIFF'S COMPLAINT
### PURSUANT TO RULE 12(b)(1) AND  12(b)(6)


**THIS CAUSE** came before the United States District Court Judge, Honorable James Robertson on Defendants Barry Soetoro a/k/a Barack H. Obama and Joseph R. Biden's Motion to Dismiss.  Having reviewed the Motion and Plaintiff's Opposition to said Motion and for good cause shown, it is hereby

**ORDERED** that the Motion to Dismiss pursuant to F.R.C.P. 12(b)(1) and 12(b)(6) is **DENIED**.

**IT IS SO ORDERED**


Dated: February _____, 2009

_____
Hon. James Robertson
United States District Court Judge
 For the District of Columbia

Dockets.Justia.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | | |
|---|---|---|
| GREGORY S. HOLLISTER, | : | |
| | : | |
| *Plaintiff,* | : | |
| *vs.* | : | CIVIL ACTION NO. 1:08-cv-02254 JR |
| | : | |
| BARRY SOETORO, Et Al. | : | |
| | : | |
| *Defendants.* | : | |

---

### PLAINTIFF'S OPPOSITION and MEMORANDUM OF POINTS and AUTHORITIES IN SUPPORT THEREOF TO MOTION OF DEFENDANTS BARRY SOETORO a/k/a BARACK H. OBAMA and JOSEPH R. BIDEN TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(b)(1) AND 12(b)(6)

Comes Now Plaintiff Gregory S. Hollister [hereinafter "Plaintiff"], through his counsel John Hemenway, Esquire, Philip J. Berg, Esquire and Lawrence Joyce, Esquire, and files the within Brief and Memorandum of Points and Authorities in Opposition to the Motion of Defendants, Barry Soetoro a/k/a Barack H. Obama [hereinafter "Soetoro"] and Joseph R. Biden [hereinafter "Biden"] to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds:

• Plaintiff has standing to bring suit against Soetoro and Biden;

• Claims are stated in which relief can be granted. Pleadings in a Complaint are that of Notice Pleading and not Fact Pleading; and

• Plaintiff has a real, reasonable, bona fide fear of exposure to multiple claims or the hazards and vexation of conflicting claims, and he also fears he will

imminently suffer injury - an invasion of a legally protected interest that is concrete and particularized.

For the above aforementioned reason's, Defendants Motion to Dismiss should be denied.

Respectfully submitted,

Dated:  February 13, 2009

s/ Philip J. Berg

Philip J. Berg, Esquire
*Attorney for Plaintiff*
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA   19444-2531
Identification   No.  09867
(610) 825-3134

Dated:  February 13, 2009

s/ Lawrence J. Joyce

Lawrence J. Joyce, Esquire
*Attorney for Plaintiff*
1517 N. Wilmot Road, Suite 215
Tucson, AZ 85712
Arizona Bar No. 020856
(520) 584-0236

Dated:  February 13, 2009

s/ John D. Hemenway

John D. Hemenway, Esquire
Hemenway & Associates
4816 Rodman Street NW
Washington, D.C. 20016
(202) 244-4819
D.C. Bar No. 379663

**PLAINTIFF'S MEMORANDUM OF POINTS and AUTHORITIES IN
SUPPORT OF HIS OPPOSITION TO DEFENDANTS,
BARRY SOETORO a/k/a BARACK H. OBAMA
and JOSEPH R. BIDEN'S MOTION TO DISMISS**

## BACKGROUND

Plaintiff filed the within action on or about December 31, 2008 against Defendants seeking Declaratory and Injunctive Relief.

As pleaded in Plaintiff's Complaint, Plaintiff is a retired Military Officer subject to recall. Plaintiff has taken an Oath to uphold the United States Constitution and defend against all enemies both foreign and domestic [Complaint ¶¶ 6-8, First Amended Complaint ¶¶ 6-8]. Plaintiff has a sufficient basis to question Soetoro's citizenship status, as pleaded in his Complaint [Plaintiff's Complaint at ¶¶ 15-34, First Amended Complaint ¶¶ 17-40].

A few days after the filing of Plaintiff's complaint, Philip J. Berg's Assistant, Lisa Liberi received a call on January 2, 2009 at approximately 10:00 a.m. Eastern Standard Time from John Hemenway, Esquire stating the Court refused to file the Complaint without a Motion for Leave to File Interpleader. Lisa Liberi immediately contacted the Court and spoke with Maureen Higgins. Ms. Higgins was adamant that she would not allow the filing of Plaintiff's Complaint for Interpleader without a Motion for Leave to File Interpleader. Lisa Liberi explained a Motion for Leave to File Interpleader was not a prerequisite to filing a Complaint pursuant to Interpleader. Ms. Higgins told Lisa Liberi that if she did not file the Motion by noon, as it was year-end close, then Plaintiff's Complaint would not be filed. [Declaration of Lisa Liberi ¶ 6 ].

In an attempt to resolve the issue, John Hemenway, Esquire, Counsel for Plaintiff went down to the Court and asked to see the Judge who would be assigned to Plaintiff's Complaint. In fact, Ms. Higgins not only refused Mr. Hemenway access to the Judge, she refused to state who the Judge assigned would be. [Declaration of Lisa Liberi ¶¶ 4-5 ]

Lisa Liberi immediately contacted David Scott, Ms. Maureen Higgins' Supervisor. Mr. Scott called Ms. Higgins into his office and placed the call on speakerphone. Ms. Liberi read the rules to David Scott pertaining to Interpleader and also read him the U.S. District Court, District of Columbia's local rules and nowhere did it state a necessity to file a Motion for Leave to File an Interpleader Complaint. Ms. Higgins became upset and raised her voice at Ms. Liberi, again stating that if she did not have a Motion for Leave to File an Interpleader Complaint, she would not file Plaintiff's Complaint. David Scott instructed Lisa Liberi to file the Motion for Leave to File Interpleader so Plaintiff's Complaint could be filed and he further informed Ms. Liberi if there were any further problems he himself would go in and see the Judge. Counsel for Plaintiff complied with the Clerk's demands in order to protect the Plaintiff's rights. [Declaration of Lisa Liberi ¶¶ 8-10]

Defendants filed their Motion to Dismiss on or about January 26, 2009.

On or about February 4, 2009, this Honorable Court ruled on Plaintiff's Motion for Leave to File an Interpleader action and Deposit Funds with the Court. This Court found said Motion to be frivolous. Again, this is the Motion this Court's Clerk made Plaintiff's counsel file in order to file Plaintiff's Complaint. This Honorable Court also dismissed Plaintiff's Motion for an Order shortening time as moot and held the two pending Motions for Philip J. Berg, Esquire and Lawrence J. Joyce, Esquire to be entered

*pro hac vice* in abeyance until the Court has had the opportunity, in open court, to examine their credentials, their competence, their good faith and the factual and legal bases of the Complaint they have signed.

Plaintiff filed a First Amended Complaint on February 9, 2009. Plaintiff's First Amended Complaint added new information pertaining to the Hawaii Department of Home Lands as well as a new Cause of action under *Bivens*.

This Honorable Court issued an Order February 11, 2009, which Plaintiff's counsel did not receive from the Court, and did not even receive by any means at all until the evening of February 12, 2009, since Plaintiff's counsel have been refused an ECF log-in until they are entered *pro hac vice*. Thus, when documents are electronically filed, Counsel does not receive them electronically. This Court Ordered that "Plaintiff's amended complaint [#11] adds nothing to the original complaint except rhetoric and legal theory and creates no obligation upon the defendants to respond to it. Nor is the amended complaint responsive to defendants' motion to dismiss [#9], opposition to which was due on 2/9/09. Unless points and authorities in opposition to the motion to dismiss are filed by 2/13/09, the motion will be treated as conceded and granted." Again, Plaintiff's counsel did not receive this Court's Order until the evening of February 12, 2009.

In Defendants Motion to Dismiss Counsel for the Defendants state the following on Page 2, footnote 1:

> "President Obama has publicly produced a certified copy of a birth certificate showing that he was born on August 4, 1961, in Honolulu Hawaii. *See, e.g.*, Factcheck.org, "Born in the US.A.: The truth about Obama's birth certificate," *available at* ttp://www.factcheck.org/elections-2008/born_in_the_usa.html (concluding that the birth certificate is genuine, and noting a contemporaneous birth announcement published in a Honolulu newspaper). Hawaii officials have publicly verified that they have President Obama's "original birth certificate on record in accordance

with state policies and procedures." *See* "Certified," *Honolulu Star Bulletin*, Oct. 31, 2008. This Court can take judicial notice of these public news reports. *See The Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991); *Agee v. Muskie*, 629 F.2d 80, 81 n.1, 90 (D.C. Cir. 1980)."

Defendants footnote is not completely accurate. In response to requests from the general public for Soetoro to produce proof of his citizenship, Soetoro allowed the Daily Kos to post on their website an image of a Certification of Live Birth with Obama's name on it purporting to be Obama's birth certificate at www.dailykos.com. This same image was also placed on Obama's website, http://fightthesmears.com and on another website located at http://factcheck.org. Obama's website "fightthesmears.com" states:

"Smears claiming Barack Obama doesn't have a birth certificate aren't actually about that piece of paper — they're about manipulating people into thinking Barack is not an American citizen. The truth is, Barack Obama was born in the state of Hawaii in 1961, a native citizen of the United States of America."

"Next time someone talks about Barack's birth certificate, make sure they see this page."

The website then claims to present "**Barack Obama's Official Birth Certificate**". This so-called "Official Birth Certificate" "---which in fact is not a birth "certificate" at all, but is instead a "certification" of birth--- is dated 11/01 at the bottom left hand side and the certification number has been blacked out. Further, factcheck.org misleadingly states that the "director of Hawaii's Department of Health confirmed Oct. 31 that Obama was born in Honolulu." This is not the case. Dr. Chiyome Fukino's statement that she has "personally seen and verified that the Hawaii State Department of Health has Sen. Obama's original birth certificate on record in accordance with state policies and procedures" does not confirm Obama's birth in Hawaii. See **EXHIBIT "1"**.

Further, the image placed on these websites is of a Hawaiian Certification of Live Birth (COLB) which is provided for children's births in Hawaii as "natural born", as well as births abroad, which have been registered in Hawaii, whether the citizenship status was "natural born" or "naturalized". It should be noted that Maya Soetoro-Ng was born in Indonesia in 1970. She was born a "natural" citizen of Indonesia. However, her birth was registered in Hawaii as a birth abroad and she is only a "naturalized citizen, not "natural born"; despite this she was issued a Hawaiian Certification of Live Birth (COLB). Thus, the posting of Obama's purported birth certificate did not prove Obama was a "natural born" citizen.

A Certification of Live Birth is **not** sufficient evidence to prove one is a "natural born" U.S. citizen. In fact, a Certification of Live birth is not even sufficient evidence of Hawaiian heritage for the Department of Hawaiian Home Lands (DHHL) to secure a land lease for someone. See **EXHIBIT "2"**.

For the above stated reasons and to comply with this Honorable Court's Order, Plaintiff files the within Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss.

## ARGUMENT

### I.    Plaintiff Amended his Complaint as a Matter of Course

Defendants Soetoro and Biden filed their Motion to Dismiss Plaintiff's Complaint on January 26, 2009. Plaintiff filed a First Amended Complaint, which Plaintiff was entitled to do. From the time of the filing of Plaintiff's First Amended Complaint, Defendants' pending Motion to Dismiss is deemed moot. See: _McAlister v. Potter_ (J. Collyer), 570 F.Supp.2d 24, fn.3 (D.D.C., 2008); _Amos v. The District of Columbia_ (J.

Collyer), Not Reported in F.Supp.2d, 2008 WL 5227177, (D.D.C., 2008); *Catholic Cemeteries of Archdiocese of Washington, Inc. v. Nordlinger Inv. Corp.* (J. Collyer), Not Reported in F.Supp.2d, 2005 WL 525415, fn.#2, (D.D.C., 2005.).

Federal Rules of Civil Procedure, Rule 15(a)(1) states in pertinent part:

*Rule 15. Amended and Supplemental Pleadings*

(a) Amendments Before Trial.

(1) Amending as a Matter of Course.

A party may amend its pleading once as a matter of course:

(A) before being served with a responsive pleading; or

(B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.

According to the D. C. Circuit Court of Appeals, Rule 15(a) "guarantee[s] a plaintiff an absolute right" to amend the complaint once at any time so long as the defendant has not served a responsive pleading and the court has not decided a motion to dismiss. See: *James V. Hurson Assocs., Inc. v. Glickman,* 229 F.3d 277, 282-283 (D.C. Cir. 2000). This Court itself has also recognized that Rule 15(a) guarantees "a plaintiff a right to amend a complaint once at any time before the defendant has filed a responsive pleading." See: *Evans v. Chase Manhattan Mortg. Corp.* (J. Collyer), Not Reported in F.Supp.2d, 2005 WL 555411, pg. 2, (D.D.C., 2005.)

The motion filed by Defendants does not constitute a responsive pleading. As the D.C. Circuit Court of Appeals has stated, "We have repeatedly clarified that a motion to dismiss is not a responsive pleading for the purposes of Rule 15." *James V. Hurson Associates, Inc. v. Glickman*, 229 F.3d 277, 283, (C.A.D.C., 2000). See also: *Confederate Memorial Ass'n, Inc. v. Hines*, 995 F.2d 295, 296, (C.A.D.C., 1993) ("As a motion to

dismiss is not ordinarily considered a "responsive pleading" under Rule 15(a), (citation omitted), appellants could have amended their complaint as of right prior to the court's decision on the motions."). This Court has reached the same conclusion. See: _Davis v. U.S._, (J. Collyer), Not Reported in F.Supp.2d, 2006 WL 2687018, fn. #1, (D.D.C., 2006). Thus, Plaintiff was entitled under Rule 15(a) to file his First Amended Complaint as a matter of right and therefore the pending Motion to Dismiss should have been deemed moot.

In _Pure Country, Inc. v. Sigma Chi Fraternity_, 312 F.3d 952 (8th Cir. 2002), the Eighth Circuit decided a case similar to Plaintiff's filing of a First Amended Complaint herein. In that case, Sigma Chi moved to dismiss _Pure Country's_ complaint and then, while that motion still was pending, _Pure Country_ moved to amend its complaint. The District Court granted the motion to dismiss, and held that the motion to amend thereby was rendered moot. The Court of Appeals disagreed and held that, "[t]hat approach, as a procedural matter, was plainly erroneous," id. at 956, and stated that, "[i]f anything, _Pure Country's_ motion to amend the complaint rendered moot Sigma Chi's motion to dismiss the original complaint." Id. Plaintiff herein was entitled to file a First Amended Complaint as Defendants had not answered his complaint; the filing of Plaintiff's First Amended Complaint was a matter of course. In addition, just as in _Pure Country_, the filing of Plaintiff's Amended Complaint herein rendered the Defendants' Motion to Dismiss moot.

## II.     Standing and the Speculative Nature of the Complaint

Defendants state that the allegations of the Complaint are too speculative for this Court to have jurisdiction (Mot. at 5-6). They state that supposedly, Plaintiff Hollister

must show 1.) injury in fact; and 2.) a causal connection between the injury in fact and the conduct complained of; and 3.) a substantial likelihood that the requested relief will be redressed by a favorable decision. *Ibid*. Such statements demonstrate a lack of knowledge of the fundamentals of Interpleader, however.

In Interpleader, a Plaintiff need not show harm or an immediate threat of harm. As we pointed out in the Complaint, Courts have recognized that all that need be shown is a real, reasonable, bona fide fear of exposure to multiple claims or the hazards and vexation of conflicting claims. See *American Fidelity Fire Insurance Co. v. Construcciones Werl, Inc.*, 407 F. Supp. 164 (D. Virgin Islands 1975). See also, *Underwriters at Lloyd's v. Nichols*, 363 F.2d 357 *Nichols*, 363 F.2d 357 (8th Cir. 1966) (in such circumstances, court has a duty to allow Interpleader). The Fifth Circuit has even gone so far as to say that no specific demand need have been made on the plaintiff by the defendants for the property in question. (Complaint at ¶ 37, First Amended Complaint ¶ 43). See *Dunbar v. United States*, 502 F.2d 506 (5th Cir. 1974).

Defendants simply fail to appreciate the fact that Interpleader is for those cases in which the threat of harm is speculative as well as for those cases in which the threat of harm is immediate. This addresses both point one (1) and point two (2) of Defendants' three-part test, since if injury or an immediate threat of injury need not be shown, it would be irrational to require Plaintiff Hollister to establish a causal connection between an injury and the Defendants' conduct.

As for the third part of the Defendants' test, in Interpleader, relief consists of the Court's dispelling of the fear of multiple claims, and of the potential hazards and vexations thereof. Given the fact that the relief we have requested will do precisely that

if granted as pleaded  (Complaint at Prayer for Relief A-J, pp. 19-21, First Amended Complaint pp. 20-22 and 27-29), there is a substantial likelihood that the requested relief will be redressed by a favorable decision.

Defendants also fail to appreciate the point raised in the Complaint about the significance of _United States ex rel. New v. Perry_, 919 F. Supp. 491 (D.D.C. 1996); _aff'd sub nom. New v. Cohen_, 129 F.3d 639 (D.C. Cir. 1997), _cert. den._, 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513. (Complaint at ¶ 41, First Amended Complaint ¶ 47)  Any argument about Plaintiff Hollister's Complaint alleging things that are too speculative must be considered in light of the fact that by Act of Congress (as construed in _New v. Perry_), if Hollister is recalled to active duty, from that moment on, the Article III courts are closed to him under the precedent of this very Court and of the D.C. Circuit. Accordingly, this is the only chance which Plaintiff Hollister has to prevent a potentially catastrophic confrontation between himself and his superiors as to what may or may not be an illegal order that he is obligated to disobey, or a legal order which he must obey; and right now, before his reactivation, is the only window of time available to him to straighten this potential conflict out before such a confrontation can happen, with potentially devastating consequences for him and for others.  Plaintiff Hollister, we ask the Court to keep in mind, has a present-tense status, right now, of being someone who is subject to a recall order.  Thus, the Act of Congress which bars active duty members of the Armed Forces from having access to this Court right now hangs like a Sword of Damocles over Plaintiff Hollister's head.  And that is not speculative.

Defendants also cite multiple other cases in support of their Motion to Dismiss, and we ask this Court to consider each of those cases carefully in context in reaching its

decision concerning that Motion.  For instance, Defendants cite _Rann v. Chao_ for the proposition that a Court is not required to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations. (Mot. at 4.) _Rann_, however, was a case in which the plaintiff continually failed to submit the affidavit that was requested by the Court. _Rann_, 154 F.Supp. 2d 61, 64 (D.D.C. 2001).  When and if a situation should arise in the instant case in which Plaintiff Hollister were to be guilty of similar misconduct, perhaps _Rann_ would then apply, but not a moment sooner.

Defendants also rely on _Bell Atlantic Corp. v. Twombly_. (Mot. at 4.) _Twombly_, however, was a case brought under the Sherman Anti-Trust Act, which has its own requirements for the sufficiency of a complaint. _Twombly_, 127 S.Ct. 1955, 1964 (2007). Furthermore, Defendants went so far as to quote _Twombly_ for the proposition that a plaintiff must provide "more than labels and conclusions" and they quoted _Twombly_ for the proposition that the allegations in the Complaint "… must be enough to raise a right to relief above the speculative level." (Mot. at 4.)  If, however, the Defendants were to have continued their quotations of the paragraph in _Twombly_ from which they got those two quotes, this Court would have seen that the Supreme Court also said, in that exact same paragraph, the following:

> "('Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations'); (a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely')." _Twombly_, 127 S.Ct. at 1965 (citations omitted).

Defendants also cite _Shirk v. Garrow_, apparently for the proposition that there is a precedent from this Court (which supposedly might have application to this case) in following _Twombly_. But in _Shirk_ the party who brought a third-party complaint simply

alleged the conclusion that a real estate broker was liable to the third-party plaintiff without stating any basis at all for that conclusion, nor was there any basis in the original complaint which the Court could look to in order to find any such basis, either. *Shirk v. Garrow*, 505 F.Supp. 169, 173 (D.D.C. 2007).  In similar manner, Defendants refer this Court to *Smith v. Shimizu*, 544 F.Supp. 2d 15 (D.D.C. 2008) (Mot. at 5.); but in *Smith* this Court said that the plaintiffs' allegations were in fact similar to those of another case which the exact same plaintiffs had filed in this Court, a case in which the allegations had eventually been found by the D.C. Circuit to be "fantastic or delusional". *Smith*, 544 F.Supp. at 17.  Accordingly, *Shirk* and *Smith* have no application to the instant case.

Defendants also ask this Court to look to *Kowal v. MCI Communications Corp*. That was a case in which the D.C. Circuit said that a court need not accept inferences in a complaint if the inferences are unsupported by the facts set out in the complaint, and need not accept legal conclusions cast in the form of factual allegations. (Mot. at 4.)  But *Kowal* was a case in securities fraud, and the Court based its dismissal on the grounds that the complaint did not allege the basis of fraud with the particularity required by Federal Rule of Civil Procedure 9(b). *Kowal*, 16 F.3d 1271, 1277-1278 (D.C. Cir. 1994). Thus, *Kowal* likewise has no application to the instant case.

Defendants also refer this Court to *Papasan v. Allain*. (Mot. at 4.)  But in that case, in the very same paragraph to which the Defendants apparently refer, the Supreme Court also noted that the plaintiffs had provided no facts upon which anyone could conclude that the defendants had denied the plaintiffs "a minimally adequate education", which supposedly formed the very foundation of their complaint. *Papasan*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209, 232 (1986).  By contrast, in the instant case,

Plaintiff Hollister has made reference to numerous allegations of fact which constitute the basis of his suit. (Complaint at ¶¶ 15-34; First Amended Complaint at ¶¶ 17-40)

### III.   A Claim Upon Which Relief Can Be Granted

As this Court is aware, in deciding a Motion to Dismiss pursuant to *Federal Rules of Civil Procedure* 12(b)(6), the Court accepts the factual allegations of the Complaint as true and draws all reasonable inferences therefore in favor of the Plaintiff. *Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hospital*, 185 F.3d 154, 155 (3d Cir. 1999), *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997).

In making a determination, the Court must construe the pleading in the light most favorable to the non-moving party. *Budinsky v. Pennsylvania Dept. of Environmental Resources*, 819 F.2d 418, 421 (3d Cir. 1987).

Defendants do more than just insinuate that Plaintiff Hollister's Complaint is nothing more than Counsel Philip J. Berg's own lawsuit in a different form; they actually come right out and say it. (Mot. at 2-3, 7-8.)  Aside from the impropriety of attempting to prejudice Plaintiff Hollister's rights by ascribing to him the efforts of Philip J. Berg as a party himself in other suits, Defendants do not even give this Court citation to authority which, in context, supports their contention that Hollister's Complaint states no claim upon which relief can be granted.  They first cite an Interpleader case, *Mallinckrodt Medical v. Sonus Pharmaceuticals*. (Mot. at 7.)  But in *Mallinckrodt*, the plaintiffs actually tried to get this Court either to order the defendants to institute an interference proceeding alleging patent infringement before the U.S. Patent and Trademark Office, or to order the defendants to pursue such a claim in this Court. *Mallinckrodt*, 989 F.Supp. 265, 270 (D.D.C. 1998).  The Defendants in the instant case point to no portion of

Plaintiff Hollister's Complaint that is similar in that respect, nor could they, for there is no portion of Hollister's Complaint that is so similar.

Defendants next cite to another Interpleader case, _Bierman v. Marcus_, for the proposition that a plaintiff must not be allowed to misuse Interpleader on a mere pretense of adverse claims in order to obtain adjudication of controversies other than entitlement to the fund in question. (Mot. at 7.)  But _Bierman_ was a case in which an interpleaded defendant had claimed that he was owed a completely different type of relief (in fact, an antithetical type of relief) than that which was supposedly the basis of the Interpleader claim; the defendant did not claim that he was owed any money, but rather that he had been defrauded, and that the whole agreement between him and the plaintiffs should be voided, rather than be affirmed by the Court's granting him a sum of money pursuant to the agreement. _Bierman_, 246 F.2d 200, 201-202 (3rd Cir. 1957).  The Third Circuit also went on to say in _Bierman_,

> "In this case it is clear that the plaintiffs did not believe or assert in good faith that there was any danger of Milmar, Inc., claiming the unpaid purchase money. We say this because of a fact not heretofore mentioned in this opinion. At the time Miller and Bierman filed their complaint expressing fear that Milmar, Inc., might claim the purchase price of the shares, they were the sole stockholders of Milmar, Inc., and in complete control of that corporation. …. Thus, when they impleaded Milmar, Inc., they knew that corporation had no claim on them for the purchase price and could not even assert a fictitious claim without their consent." _Bierman_, 246 F.2d at 203 (3rd Cir. 1957).

Aside from the fact that neither Plaintiff Hollister nor his counsel have engaged in such scandalous behavior, once again the Defendants in the instant case, in their Motion to Dismiss, point to nothing in Plaintiff Hollister's Complaint which could support such a comparison, nor could they.

Defendants go on to cite another Interpleader case, *Truck-A-Tune, Inc. v. Re*; this case, however, has substantive similarities to *Bierman*. In *Truck-A-Tune*, before filing suit, the plaintiff had first refused to obey the order of a court of the State of New York to turn over to the administrator of an estate a certain Mercedes-Benz automobile. *Truck-A-Tune*, 23 F.3d 60, 61 (2nd Cir. 1994). While the proceedings were still underway in the New York Court, Plaintiff *Truck-A-Tune* filed an affidavit with the Tax Assessor of the Town of Greenwich, Connecticut, stating that *Truck-A-Tune* had possession of the vehicle and that the owner was deceased. Because the deceased owner had failed to pay personal property taxes on the vehicle for many years, the Assessor filed a petition with the Connecticut Probate Court asking the Court to prevent the car from leaving Connecticut. *Ibid.* Having thus created that conflict, *Truck-A-Tune* sought to use Interpleader to obtain an order of a federal court against the defendants from their seeking an injunction in any court against *Truck-A-Tune* for its failure to deliver the Mercedes pursuant to the court order at the earlier date. *Ibid.* Thus, in *Truck-A-Tune*, as in *Bierman*, the plaintiff had sought to create a conflict where none had otherwise existed in order to avoid the consequences of the law to which the Plaintiff would otherwise be answerable. And so yet again, in the instant case we see no allegation in Defendants' Motion to Dismiss alleging any basis for thinking that Plaintiff Hollister's Complaint points to similar conduct here, except of course for whatever implications may be present in their own attempt to prejudice Plaintiff Hollister's rights with their reference to counsel Philip J. Berg's efforts on his own behalf in another case.

For the aforementioned reasons, Plaintiff respectfully requests this Honorable Court to deny Defendants Motion to Dismiss, Order immediate Discovery and allow Plaintiff to Amend his Complaint.

## IV.    <u>CONCLUSION</u>

For the above aforementioned reasons, Plaintiff respectfully requests that the Motion of Defendants Barry Soetoro a/k/a Barack H. Obama and Joseph R. Biden's to Dismiss Plaintiff's Complaint pursuant to F.R.C.P. 12(b)(1) and 12(b)(6) be denied.  If the Court is inclined to grant Defendants motion, Plaintiff respectfully requests the opportunity to amend his Complaint pursuant to the findings of this Court in order to avoid dismissal.

Respectfully submitted,

Dated:  February 13, 2009

s/ Philip J. Berg
_____
Philip J. Berg, Esquire
*Attorney for Plaintiff*
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA   19444-2531
Identification  No.  09867
(610) 825-3134

Dated:  February 13, 2009

s/ Lawrence J. Joyce
_____
Lawrence J. Joyce, Esquire
*Attorney for Plaintiff*
1517 N. Wilmot Road, Suite 215
Tucson, AZ 85712
Arizona Bar No. 020856
(520) 584-0236

Dated:  February 13, 2009

s/ John D. Hemenway
_____
John D. Hemenway
Hemenway & Associates
4816 Rodman Street NW
Washington, D.C. 20016
(202) 244-4819
D.C. Bar No. 379663

EXHIBIT "1"



## Hawaii Reporter
Freedom to Report Real News

---

### State Can't Legally Release Barack Obama's Birth Certificate, But State Health Department Verifies The Original is On File
*By Dr. Chiyome Fukino, 10/31/2008 5:28:13 PM*

There have been numerous requests for Sen. Barack Hussein Obama's official birth certificate. State law (Hawaiʻi Revised Statutes §338-18) prohibits the release of a certified birth certificate to persons who do not have a tangible interest in the vital record.

Therefore, I as Director of Health for the State of Hawaiʻi, along with the Registrar of Vital Statistics who has statutory authority to oversee and maintain these type of vital records, have personally seen and verified that the Hawaiʻi State Department of Health has Sen. Obama's original birth certificate on record in accordance with state policies and procedures.

No state official, including Governor Linda Lingle, has ever instructed that this vital record be handled in a manner different from any other vital record in the possession of the State of Hawaii.

*Dr. Chiyome Fukino is the director of the Hawaii Department of Health*

ELECTIONS 2008...

© 2009 Hawaii Reporter, Inc. | About Us | Terms of Service | Privacy Policy | Limitations of Liability

EXHIBIT "2"



# Loaʻa
# Ka ʻĀina
# Hoʻopulapula

## *Applying for*
## *Hawaiian Home Lands*

**Department of Hawaiian Home Lands**
**State of Hawaiʻi**

*Aloha kākou!*

*Welcome to the Hawaiian home lands program.  The program has its roots in the Hawaiian Homes Commission Act of 1920, as amended.  It provides native Hawaiians with several benefits that we hope will assist you and your ʻohana for generations to come.  Entry into the program, however, depends largely upon you.  In the course of applying for a homestead, you may find yourself embarking on a journey of discovery into your family's history.  While it often takes time, for most people it is a process well worth the effort.*

*This booklet is designed to make your entry into the program as smooth and fruitful as possible.  Like the ʻulu tree, the Hawaiian home lands program can provide sustenance for generations to come.*

*We look forward to serving you.*


*Aloha,*
*The Department of Hawaiian Home Lands*

*Me ka mālama `ana, ulu pono ke kumu lā`au*
*`ulu i kanu `ia a ho`opa`a `ia ma ka `āina ola mau.*
*Ho`olako ke kumu lā`au o`o*
*i nā mea `ai i nā kānaka e `ai i kāna hua.*



The breadfruit tree, planted and rooted in life sustaining land,
grows strong when it is cared for.
Year after year the mature tree provides nourishment to all who eat its fruit.

# *Table of Contents*

*2*     *Introduction*

*3*     *Eligibility Requirements*

*3*     *Tracing Your Genealogy*

*4*     *Primary Documents*

*7*     *Secondary Documents*

*9*     *Birth Certificates (Adoption)*

*9*     *Inconclusive Documents*

*9*     *Variation in Names or Single Names*

*10*     *Reasonable Basis for More Documentation*

*10*     *Where to Get Your Documents*

*10*     *Application Processing*

*12*     *Types of Homestead Leases*

*12*     *Homestead Lease Availability by Island*

*13*     *Available Residential Awards*

*13*     *Benefits of a Hawaiian Home Lands Homestead Lease*

*14*     *Applying for a Homestead Lease*

*15*     *Change in Applicant's Genealogical Information*

*15*     *Designation of Successor (Application Process only)*

*16*     *The Applicant's Responsibilities*

*18*     *Commonly Asked Questions by New Applicants*

*20*     *Commonly Asked Questions by Applicants Who Are on the Waiting List*

*21*     *Joining the `Ohana*

*23*     *Appendix*



Prince Jonah Kūhiō Kalanianaʻole

## *Introduction*

    In the early 1900's Prince Jonah Kūhiō Kalanianaʻole and his supporters sought ways to revitalize the Hawaiian people. Prince Kūhiō's vision of *ʻāina hoʻopulapula* or "restoration through the land" resulted in the passage of the "Hawaiian Homes Commission Act of 1920" (HHCA) by the United States Congress. It was signed into law on July 9, 1921, by President Warren G. Harding.

    The Act reserved 203,500 acres, "more or less," of public lands in the Territory of Hawaiʻi for homesteading by native Hawaiians. These lands were called Hawaiian home lands. Today, the Department of Hawaiian Home Lands (DHHL) is responsible for administering the Hawaiian home lands' program. DHHL continues to strive for Prince Kūhiō's vision of returning the Hawaiian people to the land through the many benefits and programs it offers.



In order to make the application process as smooth as possible, there are certain things you need to know and do as an applicant. Since the land benefits offered by the Department of Hawaiian Home Lands (DHHL) are very valuable, it is important to understand that DHHL is responsible for maintaining the integrity of the HHCA in administering its programs. An essential element of this responsibility is requiring applicants to demonstrate, through documentation, that they are eligible for the program.

## *Eligibility Requirements*

To be eligible to apply for a Hawaiian home lands homestead lease, you must meet two requirements:

- You must be at least 18 years of age; and

- You must be a native Hawaiian, defined as "any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778." This means, you must have a blood quantum of at least 50 percent Hawaiian. This requirement remains unchanged since the HHCA's passage in 1921.

## *Tracing Your Genealogy*

The general rule of thumb in determining 50 percent blood quantum is to submit enough documentation tracing your genealogy to your full Hawaiian ancestor(s). Some applicants need only go back two generations – that is, to their grandparents.

Others may need to go back further, gathering pieces of information which eventually grow into a large family tree with roots beginning with full Hawaiian ancestors.

However, before starting your search for acceptable documents, *kūkā,* or consult with your *`ohana.* They are an invaluable source of information. Once you've "talked story," you should be better prepared to begin gathering the documentation needed to show eligibility for the program.

There are two categories of documents used in determining eligibility: primary and secondary.

## *Primary Documents*

The primary documents used to show you are of age and a qualified native Hawaiian are:

- A certified copy of **Certificate of Birth**;

- A certified copy of **Certificate of Hawaiian Birth,** including testimonies; or

- A certified copy of **Certificate of Delayed Birth**.

You will need the certified birth certificates for:

- Yourself;

- Your biological father; and

- Your biological mother.

The state Department of Health (DOH), Vital Records Section, records documents by island and district (geographically) and by the date of the event (chronologically).

If your biological parents' documents don't clearly prove that you have at least 50 percent Hawaiian ancestry, you will also need certified birth certificates for:

- Your biological father's parents; and

- Your biological mother's parents.

**Sample of the <u>PREFERRED</u> birth certificate:**

# <u>Certificate of Live Birth</u>

In order to process your application, DHHL utilizes information that is found only on the original ***Certificate*** of Live Birth, which is either black or green.  This is a more complete record of your birth than the ***Certification*** of Live Birth (a computer-generated printout).  Submitting the original ***Certificate*** of Live Birth will save you time and money since the computer-generated ***Certification*** requires additional verification by DHHL.

When requesting a certified copy of your birth certificate from the Vital Records Section of DOH, **let the clerk know you are requesting it "For DHHL Purposes," and that you need a copy of the original *Certificate* of Live Birth and not the computer-generated *Certification*.  If mailing in your request form, please fill in "For DHHL Purposes" in the "Reason for Requesting a Certified Copy" section.  (See example on page 6.)**

Please note that DOH no longer offers same day service.  If you plan on picking up your certified DOH document(s), you should allow at least 10 working days for DOH to process your request(s), OR four to six weeks if you want your certified certificate(s) mailed to you.

In the event the Vital Records Section does not have a birth certificate for any of your parents or grandparents, they will issue a "No-record" certification.  "No-record" certification means after searching its records, the DOH cannot find the requested birth certificates.  Please submit this "No-record" certification with your other documents to DHHL.

If you are adopted, your biological birth record is probably sealed.   In this instance, DHHL staff may be able to assist you in getting the ethnicity of your biological parents.  Additionally, depending on your particular circumstance the Family Court may be able to help you get the information you need.  If your adoption occurred in the State of Hawaiʻi, you may be able to get a copy of your original birth certificate.  Access to out of state adoption records, however, vary according to the respective jurisdiction.

## *Secondary Documents*

There are times when the birth certificates for yourself and/or your parents or grandparents are not available and you have gotten "No-record" certifications from DOH.  DHHL may accept secondary documents which assist in establishing family ties or blood quantum in place of primary documents.

**Department of
Hawaiian Home Lands
Chairman's Office**
1099 Alakea Street, Suite 2000
Honolulu, Hawai`i   96813
Telephone: (808) 586-3800
FAX: (808) 586-3899

**Information and Community
Relations Office**
Telephone: (808) 586-3840
FAX: (808) 586-3843

Writer:
*Michele Lum Molina*

Illustrator:
*Reiko N. Tom*

Design & Production:
*VideoPoint Productions, Inc.*

Printer:
*Pacific Printing & Publishing*

Hawaiian Language Translator:
*Carol Silva*

Mahalo to the **State Department of Health
Office of Health Status Monitoring**
for its continued support and assistance.

*This booklet is meant to assist you with the application process for obtaining Hawaiian home lands.  It is not an administrative rule book.  If you wish to view the Department of Hawaiian Home Lands' *Administrative Rules*, please contact the district office in your area.



*Department of Hawaiian Home Lands*
*State of Hawai`i*
*August 2000*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GREGORY S. HOLLISTER, | : | |
| | : | |
| *Plaintiff,* | : | |
| *vs.* | : | CIVIL ACTION NO. 1:08-cv-02254 JR |
| | : | |
| BARRY SOETORO, et al | : | |
| | : | |
| *Defendants.* | : | |

## CERTIFICATE OF SERVICE

I, Philip J. Berg, Esquire, hereby certify that Plaintiff's Opposition and Brief in Support thereof, to the Motion of Defendants Barry Soetoro a/k/a Barack H. Obama and Joseph R. Biden's to Dismiss Plaintiff's Complaint Pursuant to *Federal Rules of Civil Procedure*, Rule 12(b)(1) and 12(b)(6) was served via electronic filing this 13th day of February 2009 upon the following:

Robert F. Bauer, Esquire
**PERKINS COIE**
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2003
Telephone: (202) 628-6600
Facsimile: (202) 434-1690
RBauer@perkinscoie.com


s/ Philip J. Berg
_____
PHILIP J. BERG, ESQUIRE
*Attorney for Plaintiff*
555 Andorra Glen Court, Suite 12
Lafayette Hill, PA 19444-2531
(610) 825-3134