UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREGORY S. HOLLISTER,      :
      Plaintiff            :
                           :
      vs.                  : CIVIL ACTION NO.
                         : 1:08-cv-02254 JR
                         :
BARRY SOETORO, _et al_.,     :
      Defendants     :
_____:_____

## COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE

John D. Hemenway, Esquire, Attorney for Plaintiff Gregory S. Hollister, who filed the within-captioned lawsuit _pro hac vice_ for the principal attorneys Philip J. Berg, Esq. and Lawrence J. Joyce, Esq., hereby responds to Honorable James Robertson's Order issued March 05, 2009, to Show Cause as to why he should not be sanctioned under Rule 11 (b) of the Federal Rules of Civil Procedure.  This "Show Cause" is being filed timely within the required eleven days of the date of the Order and a Show Cause Motion objecting to the dismissal motion will follow as soon as time permits.

1.  At the heart of this lawsuit is the provision found in the United States Constitution as Article II, Section 1, which states in pertinent part:

"No person except a natural born citizen... shall be eligible to the office of President; neither shall any person be eligible to that office who shall not have attained to the age of thirty-five years, and been fourteen years a resident within the United States."

2. This Honorable Court also granted Defendants Motion to Dismiss Plaintiff's Complaint on March 5, 2009.  Judge Robertson issued a Memorandum with his reasons for granting the Defendants Motion to Dismiss which stated that he had deemed Plaintiff's Complaint for Interpleader frivolous in two earlier orders.

3. The first point raised in Judge Robertson's Memorandum is that

"Plaintiff Hollister says that he is a retired Air Force colonel who continues to owe fealty to his Commander-in-Chief (because he might possibly be recalled to duty) and who is tortured by uncertainty as to whether he would have to obey orders from Barack Obama because it has not been proven--to the colonel's satisfaction--that Mr. Obama is a native-born citizen.

    4. This is not what Plaintiff Hollister's concern is. Plaintiff
Hollister is a retired Colonel, who is subject to recall. Plaintiff's concern is how an order received from Soetoro/Obama is to be regarded. Would it be a legal order which he must obey or an illegal order which he must disobey? These are not frivolous matters, as the learned Judge Robertson has suggested. Possible illegal orders are a matter of great concern to officers in the armed forces. Undersigned counsel himself entered the Army of the United States during WWII and was promoted to Infantry Second Lieutenant preparing for the anticipated landings in Japan which were scheduled for November 1, 1945. But for President Truman's use of nuclear weapons to end the war, this would have transpired. The legality of orders in and out of combat is of paramount importance. Following military service during the war, the undersigned counsel studied civil engineering, then attended the U.S. Naval Academy at Annapolis, graduating with the class of 1951. He won a Rhodes Scholarship while at Annapolis and then studied Philosophy, Politics and Economics at the University of Oxford for three years. He was invited to join the United States Diplomatic Service after successfully passing a four day examination and then joined the United States Department of State as a foreign service officer in which capacity he became a Russian/German expert. Hemenway served in Moscow during the height of the cold war (1960-1962). There is no activity in the life of

the undersigned attorney that suggests he would knowingly do or attempt to do anything frivolous. Moreover, there is nothing frivolous in the instant case as one carefully considers it in the context of the surrounding fact pattern. This is all straight forward.

5. By contrast, the Plaintiff's situation is a little more complicated. If the Plaintiff were to be recalled to duty by the Commander-in-Chief (the President), he no longer has access to our Article III Courts. Plaintiff has severe doubts concerning the legitimacy and the constitutional qualifications/eligibility of his nominal Commander-in-Chief, Soetoro/Obama. There is some doubt as to whether he is a Kenyan citizen, Indonesian Citizen, naturalized U.S. citizen or a "natural born" U.S. Citizen. Plaintiff Hollister is not even sure what his Commander-in-Chief's legal name is. As a result, Plaintiff Hollister has sought relief from this Court by way of an Interpleader Complaint, to help determine whether Soetoro/Obama is in fact constitutionally qualified/eligible to be President of the United States and Plaintiff's Commander-in-Chief.

6. Plaintiff Hollister is not the only individual in the United States who has these concerns. There have been several lawsuits filed seeking clarification as to Soetoro/Obama's legal citizenship status as well as his legal name. Several Supreme Court Justices are publicly identified as stating that they will consider the matter, if it is presented to them. How can the instant lawsuit be considered frivolous if it concerns the basic issues not considered frivolous by judges of sound reputation and wide experience?

7. A second point raised in Judge Robertson's Memorandum (p.1), is that the President of the United States had been properly vetted. This assumes facts not in evidence and was not addressed. It is clear that the constitutional qualifications of President Soetoro/Obama have not been properly vetted. Judge Robertson even cites an

earlier case filed in Pennsylvania by one of the two lead attorneys in this case, in which the judge claimed candidates in the recent presidential election had never been more closely vetted. Nothing was further from the truth. Effectively, the Pennsylvania District Court Judge was introducing his own hearsay and opinion into the case as if it were acceptable evidence. Legislation introduced into the Congress (HR 1503) would establish a vetting process for future national candidates, indicating Congressional recognition of the lack of proper credentialing in the 2008 election; unfortunately the legislation is not retro-active and therefore does not address COL Hollister's complaint.

8. In the case at bar, this Court threatens to sanction the undersigned attorney with the costs allegedly borne by the Defendants when all that would be necessary to terminate this political chicanery (substitute "crisis") that now has involved hundreds of thousands of concerned citizens would be for President Obama to display his actual birth certificate which should include the customary doctor's signature (or mid-wife) and hospital name.

9. Instead, Soetoro/Obama has blocked access to his records by sealing his college records, refusing access to his "vault" Birth Certificate; and all other documents which would provide his citizenship status. Candidate John McCain, in contrast, provided his "vault" version Birth Certificate showing his place of birth, and the issue of his eligibility was addressed in Congress, in the non-binding Senate Resolution 511.

10. Although the eligibility of John McCain to qualify as president was challenged and the remedy provided (in part by Soetoro/Obama), McCain's qualifications were solid. Much earlier, in the case of President Hoover, the Supreme Court had determined that a person born of two American citizens not resident within the

continental United States (in Hoover's case, China) could be qualified under Article II, Section 1 of the Constitution.

11.     Although Soetoro/Obama has been asked for valid proof of his birth, Defendant Soetoro/Obama has never responded. Instead, a document perpetrating to be Soetoro/Obama's birth certificate was placed on the internet in cites including, but not limited to: factcheck.org, dailykos.com and fightthesmears.com. This image so presented was later challenged by a forensic expert as a forged and/or altered document. It should be noted the only organization which has actually seen the "supposed" original Certification of Live Birth is Factcheck.org, a site which is owned by Annenberg and has close ties with Soetoro/Obama. No news media or other entity or person has been allowed access.

12.   It is a widely recognized legal principle that, when a false or modified or counterfeit document is presented as the original, under discovery, the actual document must be presented.

13.   Moreover, this document is a Certification of Live Birth which is issued by the Hawaiian State Government when births abroad or births occurring outside of a hospital are registered with the Hawaii Department of Health. A proper birth certificate provides information as to where the child was born, weight, length, parent's information, doctor information, etc. The Certification of Live Birth provided by Soetoro/Obama only shows he was born-- somewhere. The Hawaii Department of Home Lands will not even accept its own Certification of Live birth for purposes of proving Hawaiian Heritage, much less "natural born" status.

13. Asking for proof of citizenship is critical in Plaintiff's case. If the Plaintiff makes the wrong decision, he could be court - martialed and faced with serious charges by the military. The Citizenship status of our President should not be kept confidential.

14. Judges often have ruled the public interest outweighs any type of confidentiality. In this Honorable Court's Memorandum, p. 2, ¶1, Judge Robertson opines that "...The real plaintiff is probably Philip J. Berg, A lawyer...who has pursued his crusade elsewhere, see Berg v. Obama, 574 F. Supp. 2d 509 (E.D.Pa. 2008),...that case was the subject of a scholarly opinion by a judge who took Mr. Berg's claims seriously – and dismissed them. Mr. Hollister is apparently Mr. Berg's fallback brainstorm, essentially a straw plaintiff, one who could tee [sic] Mr. Berg's native-born issue up for decision on a new theory..." We referred earlier to this case.

15. This opinion is not only completely absurd; it is extremely prejudicial to the Plaintiff herein and the undersigned attorney who is being threatened with sanctions. Contrary to Judge Robertson's findings, Berg v. Obama was never heard on its merits, instead it was dismissed for lack of jurisdiction pursuant to F.R.C.P. 12(b)(1) and is currently under appeal in the Third Circuit Court of Appeals. Moreover, Berg v. Obama has no place here in Plaintiff Hollister's action. As noted above, the Pennsylvania judge relied on his own opinion and prejudices to determine that candidate Obama had been thoroughly "vetted." To "vet" is hardly a judicial term. It is slang at best and should not be used to "prove" legal matters from material from the Internet of some unknown person's "blog" as, surprisingly enough; several Judges have done, including this Court.

16. There are numerous military personnel and officers who have the same concern as the Plaintiff herein. Dr. Orly Taitz, Esquire, has a list in excess of 85 (check #- I have

seen the #120) military personnel. These are potential Plaintiffs who will decline to obey any orders issued by Soetoro/Obama as long as there are serious concerns whether Soetoro/Obama is a Kenya citizen, Indonesia citizen, U.S.citizen, or if he is a "natural born" citizen constitutionally qualified to serve as United States President.

17. Moreover, Ambassador Keyes, a presidential candidate has filed suit against Soetoro/Obama at the time of the filing of the instant lawsuit regarding the citizenship status and legal name of Soetoro/Obama , which is still pending and was currently being litigated at the time of the filing of the instant lawsuit. The issues are similar and no legal authority has accused Ambassador Keyes of bringing a "frivolous" lawsuit or threatening him with Article 11 sanctions.

18. Judge Robertson states "The filing and service of the complaint required private counsel to appear for President Obama and for Vice President Biden…" [Judge Robertson's Memorandum p. 2, ¶2]. This is not accurate. Plaintiff and Plaintiff's counsel is unaware of any personal appearance of Defendants counsel in this Court, as Plaintiff's counsel have not been afforded any opportunity to appear before this Honorable Court, not even to be heard on the issues surrounding Defendants Motion to Dismiss. As this Court is aware, appearance of counsel for either party of a suit without notification to all counsel is extremely biased and prejudicial.

19. Jurisdiction was established with this Honorable Court when Judge Robertson acknowledged that "Plaintiff having invoked both diversity and the federal interpleader statute, 28 U.S.C. § 1355, I do have jurisdiction. Because plaintiff's only claim invokes the interpleader statute, however, the suit must be dismissed for failure to state a claim."

[Judge Robertson Memorandum, p. 3, ¶1]. 28 U.S.C. § 1355 pertains to fines, penalty and forfeiture.

20.   Counsel can only assume 28 U.S.C. § 1355 is a typo.  However, if not,to clarify, Plaintiff's complaint was filed under Rule 22 Interpleader and 28 U.S.C. § 1335 and his First Amended Complaint was filed pursuant to 28 U.S.C. § 1335 and the added Bivens Claim.

21.   Judge Robertson, in his Memorandum in support of his Order of Dismissal, states "I have already called the interpleader claim "frivolous" in two interlocutory rulings [#10 and #14], and I do so again here.  [Judge Robertson Memorandum, p. 3, ¶2]. This is not completely accurate.

22.   Docket item #10, Order of Judge Robertson issued February 4, 2009, states "Plaintiff's motion to file interpleader and deposit funds with the court [#2] is frivolous and is denied." This order clearly pertains only to the Motion to file Interpleader, which was a requirement of the Clerk of the Court in order to file Plaintiff's Complaint.

23.   Docket item #14, Order to Show Cause, was issued by Judge Robertson February 25, 2009. This Honorable Court states "What was frivolous about the motion, however, was not the fact that it was filed, but the suggestion that "duties" could be filed in the registry of this court." Again, this Order only pertains to the Motion to file Interpleader, not the Interpleader Complaint itself.  Furthermore, as addressed above, when the Plaintiff asked to deposit an Interpleader bond with the Court in lieu of a cash monetary deposit, this court dismissed the motion as moot.

24.   This Honorable Court states "Plaintiff has not cited a single case that lends even colorable support to the notion that his alleged "duties" can be the "money or property"

to which the interpleader statute applies." [Judge Robertson Memorandum, p. 3, ¶2]. In Murphy v. Travelers, 534 F.2d 1155 (5th Cir. 1976) the Court stated:

"Federal interpleader jurisdiction depends on identifiable property or a limited fund or pecuniary obligation, and it is not proper to predicate jurisdiction on the mere potential to recover damages for pecuniary injury.  Wallach v. Cannon, 357 F.2d 557 (8th Cir. 1966). Failure to deposit the full amount claimed does not deprive the court of interpleader jurisdiction where the stakeholder deposits all of the specific property or the full amount of the specific 'fund' into the court."  Murphy, 534 F.2d at 1159, n. 2 (citations omitted). [emphasis added] The Court went on to say, "Requiring a stakeholder to anticipate such a recovery ab initio would frustrate the purpose of federal interpleader …" *Ibid*.

25.   The interpleader statute pertains to tangible or intangible property, which also includes "duties" and "obligations".  Judge Robertson goes on further in his memorandum at p. 3, in the first paragraph  that"The only interpleader case plaintiff cites that involves a "duty" is Bank of Neosho v. Colcord, 8 F.R.D. 621 (W.D. Mo. 1949) (Complaint, para. 12)…"

26.   With respect to the "property" requirement of the statute, the Supreme Court has held that in the federal jurisdiction, property can be recognized in intangible res, such as an interest in the confidentiality of a newspaper's contents, as well as in the timing of the release of those contents. Carpenter v. United States, 484 U.S. 19, 25-27, 108 S.Ct. 316, 320-321, 98 L.Ed.2d 275, 283-284 (1987). Other federal courts have stated that property can be recognized in other types of intangible res as well.  First Victoria National Bank v. United States, 620 F.2d 1096, 1106-1107 (5th Cir. 1980) ("rice history acreage", like "good will of a business", is property); Matter of Nichols, 4 B.R. 711, 717 (E.D. Mich.

1980) (citing Black's Law Dictionary at 1095 for proposition that "property" encompasses all things "corporeal or incorporeal, tangible or intangible, visible or invisible … "). Significantly, the District of Massachusetts has found that property can be recognized in a relationship, such as a landlord-tenant relationship, or an employer-employee relationship. Glosband v. Watts Detective Agency, Inc. 21 B.R. 963, 971-972. (D. Mass. 1982).

27. It has been found that interpleader will be allowed even when the plaintiff has no "stake" in the outcome of the litigation, or in which there is no "fund". Xerox Corp. v. Nashua Corp., 314 F. Supp. 1187, 166 U.S.P.Q. 344 (S.D.N.Y. 1970). A duty with respect to a sum of money has also been found to be a proper matter for interpleader. Bank of Neosho v. Colcord, 8 F.R.D. 621 (W.D. Mo. 1949).

28. A plaintiff is permitted to proceed in interpleader even when no formal demand against him has been made. Dunbar v. United States, 502 F.2d 506 (5th Cir. 1974). Instead, the mere fact that the plaintiff has a real, reasonable, bona fide fear of exposure to multiple claims or the hazards and vexation of conflicting claims is sufficient. American Fidelity Fire Insurance Co. v. Construcciones Werl, Inc., 407 F. Supp. 164 (D.C. Virgin Islands 1975). See also, Underwriters at Lloyd's v. Nichols, 363 F.2d 357 (8th Cir. 1966) (in such circumstances, court has a duty to allow interpleader). Also, it has been found that no "deposit" with the court is required. Murphy v. Travelers, Inc., 534 F.2d 1155 (5th Cir. 1976); Bauer v.

Uniroyal Tire Co., 630 F.2d 1287 (8th Cir. 1980).

29. Plaintiff has pled he is in possession of certain property. This property consists of duties owed by the Plaintiff to the Commander-in-Chief of the Armed Forces of the

United States and to all others above Plaintiff's rank in his chain of command, and this property also consists of certain relationships.

30.   The Plaintiff has found no case, nor did His Honor cite any such case, in which a Court held that intangible res cannot be the subject of Interpleader; and the wording of the statute upon which the Plaintiff relies to bring this case in the nature of Interpleader must be considered in light of two holdings by the Supreme Court on statutory construction:  Martin v.Wilks , 490 U.S. 760, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) and N.O.W. v.Scheidler, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994).

31.   The duties which Plaintiff Hollister has toward the Commander-In-Chief of the Armed Forces of the United States, and to all others above him in his chain of command also constitute obligations owed by the Plaintiff to the Commander-In-Chief and to all others above him in his chain of command.

32.   In light of Martin v. Wilks  and N.O.W. v. Scheidler, any attempt to read into the federal Interpleader statute a requirement that the property rights pertain only to a tangible res or that the obligations would have to constitute the tendering of a tangible res  would constitute an impermissible addition of an element not contained in the statute itself.

33.   This Honorable Court states further "Mr. Berg and Lawrence J. Joyce, an attorney who lives in Tucson, Arizona, signed the complaint in this case. (They have been filing electronically although they have not been admitted pro hac vice, see [#10].)" This again is not completely accurate.  All Plaintiff's counsels names appear on everything filed in the case herein, including John D. Hemenway.  Mr. Hemenway was not able to manage ECF log-in at the beginning of this lawsuit.  Mr. Berg has been

refused an ECF log-in and password until he becomes a member of the State Bar of the District of Columbia or the Motion to allow him admission pro hac vice has been approved. Mr. Berg's office spoke with the ECF division of the Court and was instructed to send briefs to be filed to the ECF email address for electronic filing. This is exactly what counsel for Plaintiff has done.

34. To threaten sanctions against Attorney Hemenway because of the new ECF filing procedures seems unfair in the extreme. It suggests a further restriction of access to information held by the Courts by limiting the use of the new electronic system only to the initiated. Just as Rule 11 is not designed to intimidate those seeking justice before the Court system, so should the introduction of electronic devices not be used to limit, but to facilitate access to Court information.

35. Docket entry #10 is Judge Robertson's February 4, 2009 Order wherein he instructs that "The motions of his counsel [Docket #4 and #5] for the admission pro hac vice of Philip J. Berg and Lawrence J. Joyce are in abeyance until the Court has had the opportunity, in open court, to examine their credentials, their competence, their good faith, and the factual and legal bases of the complaint they have signed." However, this Court has never afforded Philip J. Berg, Esquire or Lawrence J. Joyce, Esquire, or Attorney John D. Hemenway, for that matter, an opportunity to appear before the Court. It should also be noted, Plaintiff's counsel filed a Motion requesting this Honorable Court to vacate its February 4, 2009 Order and grant counsel's motion for admission pro hac vice, see docket entry #18. To this date, your Honor has not ruled upon that Motion. In Washington, D.C., this is not unusual, even though it is not good practice. The undersigned attorney has had a case in the Superior Court of the District of Columbia for

more than 22 years, which has numerous motions, fully briefed, upon which no action has been taken for years. Neither has an attempt to sue the Superior Court in the United States Court for the District of Columbia to force action produced any movement, so far. It appears that judges in the D.C. Circuit do not like to criticize or admonish other judges for inaction particularly where racial antagonisms play a factor. (Hoai v. Vo, a case involving the Sun Oil Company and the D.C. Superior Court and the U.S. District Court for the District of Columbia Circuit.)

36. This Honorable Court states "Mr. Berg and Lawrence J. Joyce, an attorney who lives in Tucson, Arizona, signed the complaint in this case. They are agents provocateurs –-…" [Judge Robertson Memorandum, p. 4, ¶2]. This not only is inaccurate, the speech is prejudicial. Plaintiff's complaint and any brief, response thereto or oppositions bear the name of all three attorneys. Furthermore, as stated above, Attorney Hemenway did not have any expertise in ECF log-in or filings at the time the case was submitted to this Court and Attorney Berg was refused ECF log-in until his Motion for pro hac vice was granted. Peggy in the ECF division of the court instructed Plaintiff's counsel to send any brief's via email to the ECF division of the court at dcd_cmecf@dcd.uscourts.gov.

37. Your Honor's statement regarding Attorney Berg and Attorney Joyce is nothing more than a one-sided and uninformed opinion with respect to the Defendants herein, extremely biased and extremely prejudicial to the Plaintiff. Unfortunately, the Plaintiff does not have any other avenue to obtain answers he so desperately needs and he should be afforded the same constitutional protections as all citizens of the United States and permitted his right to redress with an unbiased and un-prejudicial Judge. The fact that in raising the same basic question concerning details of President Obama's birth, none of

the many other courts at all levels have suggested that the cases have been filed "... for an improper purpose such as to harass..." as has this Court, suggests that such language is incorrect or over the top.

38. Has this Court never met a citizen who was in its presence merely because duty and obedience to the law required it? Hemenway, when in the foreign service in Moscow with the U.S. Embassy, made a study of religions, including, but not limited to Catholics, Jews, and Baptists, to document Communist policy of suppression of religion in the USSR. He was denounced in an anti-Semitic book published in 1964 in the Soviet Union called "Judaism Unadorned." Hemenway fought the State Department for implementation of a Grievance System which was put into place after Hemenway was elected President of the American Foreign Service Association (AFSA), the union for all U.S. Diplomats. Hemenway had opposed AFSA's formation, because he predicted it would turn into a company union. Hemenway witnessed an attempted carjacking, pursuing the perpetrator and made a citizen's arrest before turning the criminal over to uniformed police. As a matter of duty, Hemenway ran for Congress, as a Democrat, in Seattle. Concurrence with Mr. Berg's complaint does not make Hemenway a "foot soldier" anymore than it does servicemembers out in the field. Given Hemenway's long career in public service and history of activism on behalf of many worthy causes, the Judge's language is demeaning and unprofessional.

39. Yet, Judge Robertson went on further in his Memorandum to assert: "John D. Hemenway, on the other hand, is a member of the Bar of this Court. He may have been enlisted by Messrs. Berg and Joyce as a foot soldier in their crusade, but he is nevertheless directly responsible to this Court for the pleadings that have been filed on

behalf of the plaintiff." [Judge Robertson's Memorandum, end of p. 4] Attorney Hemenway volunteered his services to the Berg case because he believes in upholding our United States Constitution and honors the fact that citizens of the United States are entitled to ask questions, and know who their President of the United States is , and if our President is in fact constitutionally eligible/qualified to serve. No one is above the law.

40. Judge Robertson went on further stating in his Memorandum "Because it appears that the complaint in this case may have been presented for an improper purpose such as to harass; and that the interpleader claims and other legal contentions of plaintiff are not warranted by existing law or by non-frivolous arguments for extending, modifying or reversing existing law or for establishing new law, the accompanying order of dismissal requires Mr. Hemenway to show cause why he has not violated Rules 11(b)(1) and 11(b)(2) of the Federal Rules of Civil Procedure, and why he should not be required to pay reasonable attorneys fees and other expenses to counsel for the defendants." [Judge Robertson's Memorandum, pp. 4-5]. Are any attorney's fees reasonable when the "transparency in government" and "openness" promised by the candidate Soetoro/Obama would require and resolve all questions merely by presentation of a birth certificate. Seen in this light, the position of this Court appears absurd. Plaintiff's case herein was brought as a form of redress so the Plaintiff would not be placed in a situation where he is unsure if he should obey an order, as a legal order, issued by Soetoro/Obama or disobey an Order of Soetoro/Obama as an illegal order. Plaintiff clearly asked this Court to rule in two (2) different ways. Plaintiff asked this Court to deem Soetoro/Obama a "natural born" citizen and constitutionally eligible/qualified to serve as President of the United

States and as his Commander-in-Chief, and obey any orders he so issues; or to find Soetoro/Obama not a "natural born" citizen and constitutionally ineligible/qualified to serve as President of the United States and not recognize him as Plaintiff's Commander-in-Chief, and disobey any orders he gives as an illegal order.

41. It should also be noted, all through Judge Robertson's Memorandum, he uses the term "native born". Plaintiff has never used the term "native born", Plaintiff is questioning whether Soetoro/Obama is a "natural born" U.S. citizen, as the Constitution so requires to be President of the United States. The phrase "natural-born citizen" was meant by the Founding Fathers to ensure that the Presidency was never occupied by someone who was not thoroughly "Americanized" and who would be loyal to a republic and who would defend its independence and hard-won liberties. As James Madison said in the House of Representatives:

> "It is an established maxim that birth is a criterion of allegiance. Birth, however, derives its force sometimes from place and sometimes from parentage, but, in general,*place* is the most certain criterion; *it is what applies in the United States*. (James Madison, May 22, 1789, in the House of Representatives.)

42. As to the question of whether the Plaintiff's status as a member of the Armed Forces in good standing will continue, that involves matters of his reputation in the community and his risk of facing incarceration and expulsion from his career in the military (i.e., from this employer-employee relationship) if he fails to perform his duty to obey lawful orders and disobey unlawful orders correctly. The same holds true for his continued superior-subordinate relationship with the Commander-in-Chief of the Armed Forces of the United States, as well as that same relationship with every person in his chain of command.

43. As to the plaintiff's interest in knowing how to perform his duties to obey lawful orders and to disobey unlawful orders properly, A look at the present state of affairs with respect to the twin legal duties of a member of the uniformed service to obey a lawful order, and to disobey an unlawful order, will provide this Court with the insight needed to comprehend the situation the plaintiff now faces. In 1995, an Army specialist refused to obey an order on the grounds that it was an illegal order. Persons entering the military are, of course, required taking an oath to obey orders, and to defend the Constitution against all enemies, foreign and domestic. But the Armed Forces themselves construe their oath to obey orders to require only that they obey lawful orders. See The Uniform Code of Military Justice (UCMJ) 809.ART.90 (20) (military personnel need only obey the "lawful command of his superior officer"); 891.ART.91 (2), (a member of the service must obey the "lawful order of a warrant officer"; 892.ART.92 (1) service member must obey the "lawful general order"), and 892.ART.92 (2) ("lawful order"). And the courts have recognized even the affirmative duty of service members to disobey unlawful orders, most notably in the notorious "My Lai Massacre" case, United States v. Calley, 22 USCMA 534, 48 CMR 19 (1973).

44. Counsel for the specialist at his court-martial maintained at trial that it was the prosecution's burden to prove that the order was lawful. The judge, however, concluded that the order was lawful as a matter of law, and instructed the jury that the order was lawful. In 1996, the specialist was convicted at that court-martial of disobeying a lawful order, and he appealed.

45.   As the case made its way through the military appeals process, the specialist sought intervention by the Article III courts … by this court specifically, in fact. He was denied access to this court on the grounds that Congress had precluded it.  United States ex rel. New v. Perry, 919 F. Supp. 491 (D.D.C. 1996); aff'd sub nom. New v. Cohen, 129 F.3d 639 (D.C.Cir. 1997). The Supreme Court denied certiorari. New v. Cohen, 523 U.S.1048, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998).

46. Three years after the Supreme Court first declined to review the case, the United States Court of Appeals for the Armed Forces (CAAF) upheld his conviction. United States v. New, 55 M.J. 95 (2001). Specialist New had argued first of all that the lawfulness of the order was part of the prosecution's case in chief, relying on United States v. Gaudin, 515 U.S.506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), in which the Supreme Court said that it is the prosecution's burden to prove every element of an offense.  The CAAF rejected this argument, however, holding that Gaudin had no application to cases brought under the Uniform Code of Military Justice (New, 55 M.J. at 104), and that therefore the judge's decision at trial to determine that the order had been lawful as a matter of law had been proper (New, 55 M.J. at 102-104). The CAAF never even made a finding per se that the order was lawful, but simply stated instead that the specialist had not proven that the order was unlawful. New, 55 M.J. at 106-107. The Court even went so far as to say that the judge at the court-martial had properly declined to rule on the very constitutionality of the President's order on the grounds that it presented a nonjusticiable political question. (New, 55 M.J. at 109).

47.   In Judge Robertson's Memorandum in support of his dismissal of Plaintiff's complaint, Judge Robertson states "Because it appears that the complaint in this case may

have been presented for an improper purpose such as to harass; and that the interpleader claims and other legal contentions of plaintiff are not warranted by existing law or by non-frivolous arguments for extending, modifying or reversing existing law or for establishing new law..." Judge Robertson has used this as his basis issuing the Order against Attorney Hemenway to show cause why he should not be sanctioned pursuant to F.R.C.P. 11(b)(1) and 11(b)(2).

48. Federal Rules of Civil Procedure, Rule 11 states in pertinent part:

(b) Representations to the Court.

By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(c) Sanctions.
(1) In General.
If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(3) On the Court's Initiative.
On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

49. Plaintiff's arguments were by no means frivolous. Undersigned counsel points out to this Court, that credible information shows Soetoro/Obama was born in Mombosa Kenya. In any event, Soetoro/Obama's son, Soetoro/Obama, was born August 4, 1961

and at the time of his birth, his mother was only eighteen [18] years old and not old enough to pass on "natural born" United States citizenship to her son Soetoro/Obama. See the Nationality Act of 1940, revised June 1952; United States of America v. Cervantes-Nava, 281 F.3d 501 (2002), Drozd v. I.N.S., 155 F.3d 81, 85-88 (2d Cir.1998), United States v. Gomez-Orozco, 188 F.3d 422, 426-27 (7th Cir.1999), Scales v. Immigration and Naturalization Service , 232 F.3d 1159 (9th Cir. 2000), Solis-Espinoza v. Gonzales , 401 F.3d 1090 (9th Cir. 2005).

50. The Certification of Live Birth which has been mentioned numerous times is not a document which proves or conveys "natural born" United States citizenship status. Hawaii issues a Certification of Live Birth to any person whose birth is registered with the Hawaii Department of Health by parents, including those children born abroad. Hawaiian Statute §338. In any event, Soetoro/Obama's Certification of Live Birth posted on his website was challenged by a forensic expert (?) to be an altered and forged document. Although the image of Soetoro/Obama's Certification of Live Birth has been placed on the internet at dailykos.com, fightthesmears.com and factcheck.org, (the latter an internet site owned by Annenberg) no courtroom has been permitted access to the "supposed" original document. No other reporter, person or entity has been permitted to see the original document. It should also be noted, Soetoro/Obama's sister, Maya Soetoro-Ng was born in Indonesia and today is classifiable as a "naturalized citizen." However, her birth was registered in Hawaii and she, too, maintains a Certification of Live Birth.

51.   Plaintiff submitted Barry Soetoro's (a/k/a Barack H. Obama's) Indonesian school record showing Soetoro/Obama's citizenship status as "Indonesian", his name as "Barry Soetoro", etc.  Soetoro/Obama has admitted to attending the Indonesian public schools, ABC News, Indonesia Matters.  Furthermore, the laws in effect at the time Soetoro/Obama attended the Indonesian public schools have been provided in Plaintiff's complaint, Plaintiff's First Amended complaint and other filings.  In the years Soetoro/Obama attended the public schools in Indonesia, his father was listed as Lolo Soetoro, M.A.  Indonesia did not allow foreign students to attend their public schools in the late 1960's or 1970's, and any time a child was registered for a public school, the child's name and citizenship status were verified through the Indonesian Government.  See Constitution of Republic of Indonesia  (Undang-Undang Dasar Republik Indonesia 1945), Chapter 13, Law No. 62 of 1958 (all citizens of Indonesia have a right to education).  These documents are available and suggest strongly that to sanction Attorney Hemenway for assisting in filing a "frivolous" Complaint is prejudiced and wrong and most certainly violative of Hemenway's civil rights before this Court.  This Court must offer Attorney Hemenway the right to pursue pertinent discovery, if it persists in sanctioning him for a Rule 11 violation.

52.   Soetoro/Obama's mother divorced Lolo Soetoro in 1980.  In the divorce papers, the parties claim they have two [2] children, one under the age of eighteen [18} and one over the age of eighteen [18] who is a full time student and in need of financial support.  The two [2] children of the Soetoro's are Maya Soetoro-Ng and Barry Soetoro a/k/a Barack H. Obama.  The Soetoros did not have any other children.  This document is available for public inspection.

53.  As outlined above, Plaintiff's Interpleader Action was and is a proper action for no other purpose than to determine whether Soetoro/Obama's Orders, if issued, are lawful orders which he must obey or illegal orders which he must disobey.  The matter relates to his Constitutional qualification as President as defined in Article II, Section 1 of the United States Constitution.  The matter can be cleared up merely by presentation of a birth certificate or identifying the place and attendees present at Soetoro/Obama's birth. Plaintiff through Counsel properly filed an interpleader Complaint which asked this Court to take action to prevent a situation from developing in which all these issues will be compounded by additional confusion over who is lawfully entitled to be the Commander-in-Chief.

54.  There is another serious problem, previously alluded to, which suggests that Soetoro/Obama's citizenship may have been clouded by his use of a passport issued to him by Indonesian authorities, when he was considered a citizen of Indonesia.  On April 6, 2008, candidate for President Obama mentioned his travel to Indonesia and Pakistan in the summer of 1981 to demonstrate his knowledge of foreign affairs, saying," I knew what Sunni and Shia was (*sic*) before I joined the Senate Foreign Relations Committee."  Candidate Obama's press secretary, Bill Burton, confirmed to the New York Times and other periodicals that Obama had visited Pakistan in 1981, traveling with a Pakistani friend from his Occidental College days, Wahid Hamid.  In Pakistan, Obama stayed with the family of Mohammed Hasan Chandoo, another Pakistani friend. Although Obama has never again mentioned this travel (it was omitted from his two memoirs)it can be considered a fact confirmed by his own statements, that he did travel to

Indonesia and Pakistan in 1981. Pakistan was under martial law in 1981 and Christians, Jews and Americans were prohibited from entering the country. Further, Pakistan was on the U.S. State Department's "no travel" list. Even if Obama still retained a U.S. passport issued when his mother took him from Hawaii to Indonesia in 1967 to be with her second, Indonesian husband, the U.S. passport was of no value in Pakistan. Logic compels us to conclude that Obama either traveled on an Indonesian passport (obtained when he became an Indonesian citizen, through his mother) or a British passport, based on his putative birth in Kenya in 1961 or the fact that his father was a Kenyan and a British citizen.

55. The facts are quite clear based on Soetoro/Obama's own statements: (1) he acknowledges a 1981 trip to Pakistan; (2) a U.S. passport (if he had one) was of no use at that time; (3) also available to him was the possibility of a British passport or an Indonesian passport. Travel on such documents necessarily compromises his claim to United States citizenship. The relevant portion of the Immigration and Nationality Act of 1952, Title III, Chapter 1 is Section 301(a)(7) which reads:

> "...a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period of periods totaling not less than 11 years, at least five of which were after attaining the age of fourteen years: _Provided,_ That any periods of honorable service in the Armed Forces of the United States by such citizen parent may be included in computing the physical presence requirements of this paragraph."

A large number of personal documents would establish the facts of the personal citizenship status of Soetoro/Obama during this period. For example medical records, college and law school records, in addition to a genuine birth certificate or certificate from the hospital or person attending his mother during his birth, such as a mid-wife or

doctor. It is a simple matter to establish, but Soetoro/Obama has instead contested lawsuits and stonewalled demands to produce proof of his place of birth, thereby creating the very understandable inference that he is concealing the facts and hiding the truth.

56.    In the face of the facts cited above that underlie the case at bar, it is preposterous to cite Attorney Hemenway for Rule 11 sanctions. More appropriate would be to question the integrity of the attorneys representing Soetoro/Obama with the intent of determining whether they are in a conspiracy with the defendants they represent to violate the Constitution of the United States for political purposes. It is sad to read this Court's use of material from the internet to imply that the issues in the numerous lawsuits filed have been resolved by the "twittering and blogging" to determine that the litigants are invoking "conspiracy theorists." It suggests that the intellectual capacity of this Court focused on the issues in the instant suit at a very low level, perhaps for political purposes, such as to win attention from the highest authority when a seat on the Supreme Court of the United States becomes vacant. Whatever action this Court may take, sanctioning of the attorney who facilitated the filing of the case at bar is inappropriate.

57.    The intentional withholding of personal details by a President who assured those who voted for him (53% of the electorate) that he favored public policies of undiluted honesty, openness, and "transparency" can not be overstated. During a March 30, 2007 fundraiser, while campaigning, Soetoro/Obama claimed: "I was a constitutional law professor, which means unlike the current president (George W. Bush) I actually respect the Constitution." Actually he was listed among university professors as a "senior lecturer." If, through inadvertency, Soetoro/Obama mistakenly became a candidate when unqualified, there are constitutional corrections available and we now

have a fully qualified Vice-President in office. It is not helpful for a United States District Judge to endorse obfuscation when a constitutional issue is involved. Under these circumstances, to threaten sanctions against an attorney who, in good faith assisted in the filing of a law suit involving issues none of the many judges and attorneys from coast to coast have found "frivolous" is to employ the Rule 11 as a device to deprive the undersigned attorney of his civil rights and the right to due process. Without even a hearing or access to discovery being granted to defend against the charges, such a sanction would be a veritable lynching.

58. Furthermore, it is governing precedent in this Circuit that once defendant Obama becomes the plaintiff's Commander-in-Chief, the doors to this Court, and all the Article III courts, will be closed to him initially. To adjudicate his claim, the plaintiff in fact would first have to disobey an order he deemed unlawful and then wait to be court-martialed and convicted, and the appeals process thereof exhausted, before he could ask the Article III courts for a remedy. United States ex rel. New v. Perry, 919 F. Supp. 491 (D.D.C. 1996); aff'd sub nom. New v. Cohen, 129 F.3d 639 (D.C.Cir. 1997), cert. den., 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513. Hence Plaintiff cannot wait until an Order is issued by Soetoro/Obama to learn whether the Order is a legal Order he is to obey or an illegal Order he is to disobey.

59. Counsel for the Plaintiff filed the appropriate action on Plaintiff's behalf, which was an interpleader action, seeking to remedy the uncertainties Plaintiff has with whether Soetoro/Obama's Orders are legal Orders which he is to obey or illegal Orders which he is to disobey.

60.    In Forbes v. Merrill Lynch, 179 F.R.D. 107, 111 n. 6 (S.D.N.Y.1998), the Court found "[D]ue process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions."  Quoting, Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir.) (quoting In re Ames Dep't Stores, Inc., 76 F.3d 66, 70 (2d Cir. 1996)) (alteration in original), cert. denied, 118 S. Ct. 337 (1997); accord Rounseville v. Zahl, 13 F.3d 625, 632-33 (2d Cir. 1994). Rule 11. itself requires that sanctions be imposed only "after notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c); see also Fed. R. Civ. P.11(c) advisory committee's note to 1993 amendments ("Explicit provision is made for litigants to be provided notice of the alleged violation and an opportunity to respond before sanctions are imposed.").

61.    In particular, "a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter."  Lapidus, 112 F.3d at 97 (emphasis added); see also United States v.  International Bhd. of Teamsters, 948 F.2d 1338, 1346 (2d Cir. 1991) (district court must "specify the sanctionable conduct and the authority for the sanction"). "The purpose of particularized notice is to put counsel 'on notice as to the particular factors that he must address if he is to avoid sanctions.'" Lapidus, 112 F.3d at 96 (quoting Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1357 (3d Cir. 1990)). Accordingly, Rule 11 requires that the court, before imposing sanctions sua sponte, "enter an order describing the specific conduct that appears to violate [the rule] and directing [the] attorney . . . to show cause why it has not violated [the rule] with respect thereto." Fed. R. Civ. P. 11(c)(1)(B) (emphasis added).

62. Under Rule 11(c), a court may impose sanctions either by motion, see Rule 11(c)(1)(A), or on its own initiative, see Rule 11(c)(1)(B). Rule 11(c), however, also limits the types of sanctions that may be imposed for violation of the rule as follows:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. . . . [T]he sanction may consist of, or include, directives of a <u>nonmonetary</u> nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the <u>movant</u> of some or all of the reasonable attorneys'
>
> fees and other expenses incurred as a direct result of the violation. Fed. R. Civ. P. 11(c)(2) (emphasis added).

As the italicized language indicates, a court may award attorneys' fees under Rule 11 only "if imposed on motion" under Rule 11(c)(1)(A). See Thornton v. General Motors Corp., 136 F.3d 450, 455 (5th Cir. 1998) (per curiam). By its terms, the rule thus precludes a court from awarding attorneys' fees on its own initiative. See Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments ("The revision [to subsection (c)] provides that a monetary sanction imposed after a court-initiated show cause order be limited to a penalty payable to the court."); see also Thornton, 136 F.2d at 455 ("[W]here sanctions are imposed under Rule 11(c)(1)(B) by a district court on its own initiative, . . . the award of attorney's fees . . . [does not] constitute a valid sanction."); Johnson v. Waddell & Reed, Inc., 74 F.3d 147, 152 n.3 (7th Cir. 1995) (per curiam) ("[W]here sanctions are imposed under Rule 11(c)(1)(B) by the district judge on his own initiative, Rule 11(c)(2) provides that payment of sanctions may be directed only to the court as a penalty.")

63. For the above aforementioned reasons, Plaintiff's Counsel, John D. Hemenway should not be sanctioned under Federal Rules of Civil Procedure 11(b)(1) and 11(b)(2). If the Court persists in pressing Rule 11 procedures against Hemenway, then Hemenway should be allowed all of the discovery pertinent to the procedures as Court precedents have permitted in the past.

Dated:  March 16, 2009
Respectfully submitted,


_____/S/_____
John D. Hemenway
Hemenway &   Associates
4816 Rodman Street, N.W.
Washington, D.C.20016
D.C. Bar No. 379663
(202) 244-4819