```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


GREGORY S. HOLLISTER,              :
                                   :
          Plaintiff,               :
                                   :
     v.                            :  Civil Action No. 08-2254 (JR)
                                   :
BARRY SOETORO, et al.,             :
                                   :
          Defendants.              :
```

**MEMORANDUM ORDER**

We live in a free country. Our liberties are manifold and are the envy of the world. In the very top tier of those liberties, enshrined in the First Amendment, is "the right of the people . . . to petition the Government for a redress of grievances." Many of those petitions are presented to judges. Every judge knows that a disturbingly high percentage of them involve petty slights, or imagined injuries, or matters that lie well beyond the reach of the judicial writ, but most judges will agree that it is important at least to listen to them -- especially to the grievances of poor petitioners, or disadvantaged petitioners, or petitioners who do not have lawyers -- even if the courts are powerless to grant relief.

Lawyers who come to court to present grievances, however, are held to a higher standard than disadvantaged or unrepresented persons. For lawyers, there are rules. A lawyer knows that no judge has any business addressing or ruling upon a

dispute, no matter how fervently he or his clients may feel about it, unless the judge has both personal and subject matter jurisdiction, unless the client has standing to be heard, unless the cause is ripe and justiciable, and unless the complaint states a claim upon which relief can be granted. A lawyer who comes to federal court also knows, because the Federal Rules of Civil Procedure plainly say so, that his signature on a complaint "certifies that to the best of the person's knowledge and belief, formed after an inquiry reasonable under the circumstances," the complaint "is not being presented for any improper purpose," Rule 11(b)(1), and that "the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Rule 11(b)(2).

John D. Hemenway is a lawyer and a member of the bar of this court. The dispute that he attempted to litigate here was about whether or not Barack Obama is a "natural born Citizen," and thereby qualified under Article II, section 1 of the Constitution to be President. Many people, perhaps as many as a couple of dozen, feel deeply about this issue. Attempts have been made to tee the question up for judicial resolution in a number of courts across the country. <u>See</u>, defendant's motion to dismiss [Dkt. #9-1 p. 3, n.1]. Mr. Hemenway's associate, Philip J. Berg, made at least one such attempt, suing in a

federal court in Pennsylvania, naming himself as plaintiff.
After that suit was dismissed (for lack of standing), and after
the Supreme Court declined to hear him, Mr. Berg (apparently)
found another plaintiff, a man who retired from the Air Force as
a colonel more than ten years ago and now claims to be uncertain
about whether -- if he were recalled to active duty -- he would
have to obey commands that come from President Obama as
commander-in-chief. Mr. Berg (presumably) enlisted Mr. Hemenway
in this cause. Mr. Hemenway, Mr. Berg, and Lawrence J. Joyce
then filed this lawsuit.[1] Mr. Hemenway signed the complaint,
certifying his compliance with Rule 11(b).

The complaint asserts a single cause of action,
invoking the interpleader statute, 28 U.S.C. § 2235. That
statute provides:

> (a) The district courts shall have original
> jurisdiction of any civil action of interpleader or in
> the nature of interpleader filed by any person, firm,
> or corporation, association, or society having in his
> or its custody or possession money or property of the
> value of $500 or more, or having issued a note, bond,
> certificate, policy of insurance, or other instrument
> of value or amount of $500 or more, or providing for
> the delivery or payment or the loan of money or
> property of such amount or value, or being under any
> obligation written or unwritten to the amount of $500
> or more, if
>
> (1) Two or more adverse claimants, of diverse
> citizenship as defined in subsection (a) or (d) of
> section 1332 of this title, are claiming or may claim

---

[1] Messrs. Berg and Joyce are not members of the bar of this court and were not granted leave to appear *pro hac vice*. See [#10].

to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if
(2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

I have said nothing, and have nothing to say, about the merits of the "natural born Citizen" question that Messrs. Hemenway, Berg, et al., have sought to present here. I have no business addressing the merits, because, having found that Mr. Hemenway's interpleader suit failed to state a claim upon which relief can be granted, I have dismissed it. The only question that remains before me is whether Mr. Hemenway, when he signed the complaint, violated Rule 11(b). It seemed to me when I dismissed the complaint, on March 5, 2009, that Mr. Hemenway's invocation of the interpleader statute as the vehicle for his complaint was completely frivolous. For that reason, and in compliance with Rule 11(c)(3), I ordered Mr. Hemenway to show cause why I should not find him in violation of Rule 11(b), either because he presented the suit for an improper purpose,

Rule 11(b)(1), or because his claims and other legal contentions were not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Rule 11(b)(2), or both.  Mr. Hemenway, responding to that order, has filed about 35 pages of argument and self-justification.  Most of his submission deals with the merits of his claim, which, again, are not the subject of the present memorandum.

In so far as Mr. Hemenway's submission addresses the legal sufficiency of his interpleader claim, his argument may be summarized as follows:

(I.) <u>The word "property" in the interpleader statute, 28 U.S.C. § 1335, must be construed broadly</u>.  For this proposition, Mr. Hemenway cites no authority construing the word "property" as it appears in the interpleader statute; he cites only cases decided in the context of other statutes: <u>Carpenter v. U.S.</u>, 484 U.S. 19 (1987) (confidential information is "property" within the meaning of the mail and wire fraud statute); <u>First Victoria Nat. Bank v. U.S.</u>, 620 F.2d 1096 (5th Cir. 1980) "rice history acreage" is "property" for estate tax purposes); <u>Matter of Nichols</u>, 4 B.R. 711 (E.D. Mich 1980) (in bankruptcy law, "property" refers to "one, or some, of whatever kind of those items which are subject to ownership, whether it is tangible or intangible, visible or invisible, corporeal or incorporeal, real

or personal"); and Glosband v. Watts Detective Agency, Inc., 21 B.R. 963, 971-72 (D.Mass. 1981) (in bankruptcy law, "property" interpreted "most generously" to incorporate "anything of value which but for the transfer might have been preserved for the trustee to the ultimate benefit of the bankrupt's creditors").

(ii.) Mr. Hollister's "duty" can be the subject of an interpleader action. Here, Mr. Hemenway cites Bank of Neosho v. Colcord,, 8 F.R.D. 621 (W.D.Mo. 1949), for the proposition that "a duty with respect to a sum of money has . . . been found to be a proper matter for interpleader." [Dkt. #23, p. 10.] That is a significant distortion of the decision. Colcord (even if it were controlling law, which it is not) does not support Mr. Hemenway's point. Colcord was a traditional interpleader case that involved a contract for the sale of a ranch. The sale "failed," whereupon the disinterested stakeholder, uncertain whether to disburse the $5,000 earnest money to the contract seller or the contract buyer, deposited the funds in the registry of the court and sued for interpleader. The contract buyer then cross-claimed against the contract seller for specific; the contract seller moved to dismiss because the cross-claim was not for interpleader; and the court denied the motion, deciding nothing more than that a cross-claim for the "duty" of specific performance would lie in the same case because it involved the same subject matter as the underlying interpleader action.

(iii.) <u>An interpleader case does not require a formal demand on the plaintiff or even a deposit with the court</u>. Here Mr. Hemenway cites <u>Dunbar v. United States</u>, 502 F.2d 506, 511 (5th Cir. 1974). Worse than distorting the holding of that case, he completely misstates it. In <u>Dunbar</u>, the post office refused to deliver a suspicious package of money, and the United States filed an interpleader action to see who might claim it. The court was harshly critical of the government's resort to "cosmic interpleader," <u>id.</u> at 512, and refused to allow the government to use the suit as a vehicle for the conduct of broad discovery. What Mr. Hemenway should have gleaned from the case was the court's finding that "a prerequisite for [interpleader] is that the party requesting interpleader demonstrate that he has been or may be subjected to adverse claims." <u>American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.</u>, 407 F. Supp 164, 173 (D.V.I. 1975), which Mr. Hemenway cites with <u>Dunbar</u>, is to the same effect. <u>Underwriters at Lloyd's v. Nichols</u>, 363 F.2d 357 (8th Cir. 1966), an exhaustive and scholarly opinion, comes to the same conclusion, concluding that interpleader requires real claims, or at least the threat of real claims -- not theoretical, polemical, speculative, or I'm-afraid-it-might-happen-someday claims.

(iv.) <u>No court has held "that [an] intangible res *cannot* be the subject of Interpleader."</u> [Dkt. #23, p. 11]. This

proposition is remarkable only for the authorities Mr. Hemenway cites to support it: <u>Martin v. Wilks</u>, 490 U.S. 755 (1989) (a decision that has nothing to do with any issue in this case, as nearly as I can tell); and <u>N.O.W. v. Scheidler</u>, 510 U.S. 249 (1994) (statutory construction: motivation of economic purpose will not be read into RICO statute).  Moreover, one might add, no court has held that a claim made for the first time cannot on that account be found frivolous, or that "creativity" confers immunity from Rule 11 sanctions.

Perhaps the most interesting case that Mr. Hemenway cites -- interesting because, more than any of the others in his submission, it demonstrates just what is wrong with his interpleader claim -- is <u>Xerox Corp. v. Nashua Corp.</u>, 314 F. Supp 1187 (S.D.N.Y. 1970).  Xerox sued Nashua for infringing its patent on copy paper.  Nashua counterclaimed to interplead RCA, asserting that, if it was infringing Xerox's patent, it was also infringing a patent owned by RCA, and that it did not know to which party it should pay royalties.  Judge Weinfeld observed, <u>id.</u> at 1189:

> Although Nashua's invocation of interpleader in this case is novel, its assertion that if the two patents interfere, interpleader should lie because of the risk of multiple liability is not without appeal.  Rule 22(1) of the Federal Rules of Civil Procedure authorizes an interpleader action where (1) two or more persons have claims against the interpleading party, and (2) as a result, the interpleading party is or may be exposed to multiple liability.  It is no longer required that the claims be of common origin or that

> the interpleading party be a wholly neutral
> stakeholder. The rule does not even require a 'stake'
> or 'fund' as such. The action will lie where all that
> is involved is the threat of multiple liability on what
> is in fact but a single claim or obligation. While the
> patent situation is more complex than the normal
> interpleader situation, its complexity alone does not
> foreclose interpleader.

Judge Weinfeld *dismissed* the interpleader claim, however, finding that "the postulated situation envisaged by Nashua remains *no more than a conjectural view of possible conflicting holdings*," id. at 1190 (emphasis added). Judge Weinfeld went on to state, id.:

> The court is not prepared to cast Xerox and RCA in the
> role of unwilling litigants where, upon substantial
> grounds, they challenge the validity of the basis upon
> which Nashua seeks to force them into adversary
> positions, while Nashua presents only its bare
> conclusions in support of its position. Although
> parties should be protected against multiple and
> conflicting liability . . . unjustified interpleader
> proceedings in a case such as this have substantial
> disadvantages.

"The case offered no hope whatsoever of success, and plaintiffs' attorneys surely knew it." That was the finding of Judge Jackson in Saltany v. Reagan, 702 F. Supp. 319, 322 (D.D.C. 1988), a case in which, as in this one, the plaintiffs had an axe to grind -- a case, like this one, that "[t]he Court surmise[d] was brought as a public statement of protest of Presidential action with which counsel (and, to be sure, their clients) were in profound disagreement." Finding that the plaintiffs' injuries were not insubstantial (plaintiffs were suing for

injuries, deaths, and losses suffered in the 1986 American airstrikes against Libya), Judge Jackson concluded that the suit was not "frivolous so much as it is audacious," and he declined to find a Rule 11 violation or to impose sanctions on counsel. Saltany, 702 F. Supp. at 322. The Court of Appeals reversed, 886 F.2d 438 (D.C. Cir. 1989). The trial court's finding that "[t]he case offered no hope whatsoever of success, and plaintiffs' attorneys surely knew it" was, the Court of Appeals held, a finding "in substance if not in terms, that plaintiffs' counsel had violated Rule 11." Id. at 440.[2] Judge Jackson had been inclined to cut counsel a break, because their suit was brought as a "public statement of protest." The Court of Appeals was not so inclined: "We do not conceive it a proper function of a federal court to serve as a forum for 'protests,' to the detriment of parties with serious disputes waiting to be heard." Ibid.

**This case, like Saltany, offered no hope whatsoever of success, and Mr. Hemenway surely knew it. Mr. Hemenway had no colorable authority for the proposition that Mr. Hollister's contingent claim of "duty" could be the *res* in an interpleader suit, or, given the speculative and contingent nature of such a**

---

[2] That holding was reaffirmed, on a second appeal, by the law of the case doctrine, see Saltany v. Bush, 960 F.2d 1060 (D.C. Cir. 1992), over the dissent of Judge Wald that "no hope whatsoever of success" was "not an appropriate substitute for the findings required by Rule 11," id. at 1061.

- 10 -

**"duty," that his claim had any particular dollar value. Mr. Hemenway's complaint did not even allege the *sine qua non* of an interpleader suit -- that "[t]wo or more adverse claimants . . . are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits . . . arising by virtue of any such obligation. . . ." 28 U.S.C. § 1335(a)(1). Mr. Hemenway's suit was not a suit in interpleader or in the nature of interpleader. It was legally frivolous. By signing and filing a legally frivolous complaint, Mr. Hemenway violated at least Rule 11(b)(2).**

The Court of Appeals remanded <u>Santany</u> to Judge Jackson with instructions to impose a sanction, since, when that case was decided in 1989, a sanction was mandatory upon a finding of a Rule 11 violation. The 1993 amendments to Rule 11 made the imposition of sanctions discretionary with the trial court. Extensive Advisory Committee Notes explained that "the purpose of Rule 11 sanctions is to deter rather than compensate." Rule 11(c)(4) thus contemplates and permits a monetary sanction in the form of a penalty, but such a sanction is now limited to "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."[3]

---

[3] My order to show cause in this case [Dkt. #22] suggested, as one appropriate sanction, that Mr. Hemenway be ordered to pay the attorneys' fees and expenses that his improper filing made necessary. Mr. Hemenway correctly observes, however, that Rule 11(c) no longer permits an order for the payment

Mr. Hemenway is 82 years old and takes considerable and justified pride in his patriotic public service and his status as a Rhodes Scholar.  He is unlikely to repeat the conduct that gave rise to this proceeding, and in his case the permissible alternative sanction of a reprimand will be sufficient.  "Others similarly situated" -- the people who put Mr. Hemenway up to filing this foolish suit – are unlikely to be deterred, except by a penalty that would be unreasonable to impose on Mr. Hemenway alone.[4]

John D. Hemenway is hereby **reprimanded** for his part in the preparation, filing, and prosecution of a legally frivolous suit in this court.  The order to show cause [Dkt. #22] **is discharged.**  It is **SO ORDERED.**

JAMES ROBERTSON
United States District Judge

---

of attorney's fees and expenses except upon motion -- and no such motion has been filed.

[4] See http://www.obamacrimes.info/ (last visited 3/24/09) "02/13/09: PRESS RELEASE - Berg Fighting On. 3 Pending Lawsuits to Expose Obama for 'not' being Constitutionally 'qualified/eligible' to be President and Berg requests help to spread the word as the major media refuses . . . Request - Everyone who can - Please raise, by asking four [4] friends @ $15.00 each, or contribute $60.00 to us now. You can use PayPal or credit card on our website or mail a check."